THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT BENSON *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—91—2201, 1—91—2211 cons.

Opinion filed September 30, 1994.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant Albert Benson.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant Cornelius Lee.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, Jon J. Walters, and Robin Mitchell, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant, Cornelius Lee (Lee), was charged by indictment with attempted first degree murder, aggravated assault, two counts of possession of a firearm, and two counts of armed robbery. Codefendant Albert Benson (Benson) was charged by indictment with two counts of armed robbery. Following a joint jury trial, Benson and Lee were both found guilty of two counts of armed robbery. Lee was also found guilty of the possession charges. Defendants filed separate appeals; however, we have consolidated the two appeals.

Briefly, the record discloses the following facts. Shawn Lewis testified that on November 24, 1990, he was in the lobby of 514 East 36th Street. He was standing by the mailboxes when he saw two black men enter the lobby from the front door. Lewis identified the two men as Lee and Benson. Willie Gaddy testified that when he came to the lobby to meet Lewis he also saw Benson and Lee. Both Gaddy and Lewis had seen Lee before; they had never seen Benson before.

Both Lewis and Gaddy testified that as Gaddy walked up to Lewis, Lee came up to them while holding a silver revolver and said "this is a stick-up." Lee patted their pockets with the gun and asked for money. Gaddy gave Lee $8 and Lewis gave him $96. Lee also took a gold nugget ring from Lewis' hand. At trial Lewis testified that Benson did not search anyone or take anything, but Detective Holmes testified that on the night of the robbery, Lewis had told him that Benson had searched some of the people in the lobby.

The men told the people in the lobby to go upstairs and not look back. Gaddy waited and ran out the back door in an attempt to follow the offenders. As Gaddy exited the building, he saw Lee point the silver gun at him and fire a shot in his direction. Gaddy followed the men so that they would not see him. He finally got to a street where he saw a marked police car. Gaddy told the policemen that the two men crossing the street had just robbed him and that they had guns.

Police officers Boddie and Rapier testified that after Gaddy approached their car and told them about the crime, they pursued the two men in the squad car. Both officers identified Lee and Benson. As the car approached the two men, and as Boddie yelled for the men to stop, the two men turned and began to run away. Leaving the car, Boddie chased Benson, while Rapier chased Lee. As Boddie chased Benson, he saw a gun in Benson's left hand, and as Benson started to turn around, Boddie shot at Benson four times. Gaddy followed Boddie as Boddie chased Benson and saw Benson get shot. Gaddy identified Benson, the man who was shot by the police, as the man who robbed him.

Rapier testified that Lee was eventually apprehended, and that before he was caught, Lee dropped a package which was later identified as containing cocaine. Although the police conducted a search of the area, a silver gun was never recovered. After being read his rights, Lee told Detective Bresnahan that he did not commit the robbery; he ran because he did not want to get caught with drugs. At the police station, Lee was searched. Lee was carrying a bag of heroin, $96, and a gold ring which Lewis identified as having been taken in the robbery. Lee told the detective that he did not know Benson; they were just crossing the street at the same time.

Detective Ward testified he responded to Boddie's call for assistance. After canvassing the area for witnesses, he went to the hospital as he had been told the "offender" in the armed robbery had been shot and had been transported to the hospital. After he was arrested, Benson told Ward that he did not commit the armed robbery of Lewis and Gaddy. Benson stated he had been shot in the wallet on the previous Thursday and since that time he had been carrying a gun for protection. Benson did not want to get caught with this gun so he ran when the police began to chase him. As he was chased he attempted to throw the gun against a building, but a police officer shot him in the back.

Both Lewis and Gaddy testified that on December 7, 1990, a person came to their home and talked to them about the robbery. Both acknowledged their signatures on statements exonerating Benson of the robbery. However, both men also testified that the papers were folded and they did not see what was written on them.

Christian Easton testified that he went with Benson's attorney to interview Lewis and Gaddy at which time Lewis and Gaddy both stated that previously they had signed statements exonerating Benson from any involvement in the robbery.

Both defendants raise the issue that the trial court violated the holding in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, by finding that the State did not commit racial discrimination in selecting the jury. In addition, Lee argues the trial court erred in denying his motion *in limine* requesting the exclusion of evidence of his prior convictions for impeachment purposes and that he should receive a new trial due to prejudicial and inflammatory prosecutorial arguments. Benson argues he was not proven guilty beyond a reasonable doubt and that he was denied his right to a fair trial as a result of certain testimony of two police officers.

For the following reasons, we affirm the convictions of both Lee and Benson.

During *voir dire* the State utilized peremptory challenges against six prospective black jurors and one prospective Hispanic juror. A *Batson* motion was made and the trial court found that a *prima facie* case of discrimination had been established. Thus, the State was required to give race-neutral reasons for each of its peremptory challenges[1]. The defense did not respond to the reasons given by the

---

[1]The State argues that the trial judge's finding of a *prima facie* case was improper. However, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on

prosecutors. The trial court accepted the reasons proffered by the State as sufficiently racially-neutral and allowed the State to exercise its challenges.

Lee argues that the reasons given by the State for all the minority jurors (Ira Heard, Eugene Russell, Dorothy Jones, Curtiss Williams, James Powell, William Ramos, and Barbara Anderson) were merely pretexts for utilizing its peremptory challenges in a racially discriminatory manner and thus the trial court erred in finding that the State had met its burden under *Batson v. Kentucky*. Benson accepts the reasons proffered for two of the potential jurors, but makes the same argument for the remaining five[2].

Once the trial court determines that a *prima facie* case of purposeful discrimination has been established, the burden then shifts to the State to present "clear and reasonably specific" race-neutral reasons for having excluded the minority venireperson. (*Batson*, 476 U.S. at 98 n.20, 90 L. Ed. 2d at 88 n.20, 106 S. Ct. at 1724 n.20; see also *People v. Hudson* (1993), 157 Ill. 2d 401, 426.) At that point the trial court, having considered the State's proffered rationale for exercising its peremptory challenges, must decide whether the reasons are merely pretextual and whether discrimination has taken place. (*Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859.) A neutral explanation is an explanation based on something other than the race of the venireperson. *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866.

■ In excusing Ira Heard from the panel, the State indicated that Heard had a nephew who was found guilty of rape. The State felt "his involvement with the law [had] been less than pleasant for his own family." Mr. Heard had no connection with law enforcement and during *voir dire* he asked to withdraw his name from the case because he had been discharged from his job the previous week and the woman he had been with for 15 years recently passed away.

Lee argues that Heard's response was indistinguishable from the

---

the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.

[2]The State contends Benson has waived this issue by his failure to specifically raise the issue in a post-trial motion. The State is correct; however, in light of the importance of the constitutional claim raised by defendant, we choose to review this issue. See *People v. Hudson* (1993), 157 Ill. 2d 401, 425.

responses of jurors the State accepted, Mary Kyles[3], Aaron Azoff[4], Herman Montgomery[5] and Clarence Wise[6]. Defendant further argues that Heard's response could not be viewed as indicating a greater prejudice than that expressed by Margaret Balazs[7]. However, the mere fact that the State challenges a black venireperson for a reason which is equally applicable to a white juror does not show in and of itself that the offered explanation is pretextual. The Illinois Supreme Court has held:

> "[I]n many instances there will be no single criterion that serves as the basis for the decision whether to excuse a particular venireman. A characteristic deemed to be unfavorable in one prospective juror, and hence grounds for a peremptory challenge, may, in a second prospective juror, be outweighed by other, favorable characteristics." (*People v. Mack* (1989), 128 Ill. 2d 231, 239.)

A venireperson possessing an unfavorable trait may be accepted while another juror possessing that same negative trait, but also possessing other negative traits, may be challenged. (*People v. Mitchell* (1992), 152 Ill. 2d 274, 295.) Although some of the jurors the State accepted had relatives who were convicted or charged with a crime, these same individuals all had connections with law enforcement. Each of the excluded minority jurors had little or no connection with law enforcement.

In excusing Eugene Russell, the State indicated that he had a young brother-in-law with whom he was very close who had done

---

[3]Mary Kyles was "pretty close" to a nephew who was arrested and charged with a weapons offense, stemming from what she described as "[s]treet involvement with a gun." She believed he was currently in Cook County jail. Her brother was a military police officer.

[4]Aaron Azoff described an "ex-uncle by marriage," whom he was close to, as a "victim" of a crime; "[t]here was a robbery and he was convicted." Mr. Azoff was employed part-time as a security guard. He also had friends who were security guards.

[5]Herman Montgomery had been arrested for assault and battery five years earlier but the charges were dropped. He was employed as a security officer for the Chicago Public Library.

[6]In 1982 Clarence Wise was arrested for having open liquor in an automobile. The case was "thrown out." Mr. Wise said it was his "friend" who had the liquor open. A cousin through marriage and several friends are police officers.

[7]Ms. Balazs stated she was not sure that her ability to be fair would be unaffected if a policeman were to testify. She did not have a lot of trust in the police ever since an incident in which officers refused to make out a report when she had an accident. Ultimately, she stated she would make every effort to be fair. Ms. Balazs has a friend who is a public defender.

time twice, once for murder. Russell indicated that he had tried to talk to the brother-in-law and he couldn't control him. The State felt this was unpleasant and "[s]ome sort of sympathetic leanings toward these black males who are being accused here, Lee and Benson, in that they are in the clutches of the law and we felt that there might have been some sort of sympathetic leanings as his brother-in-law did time twice as he indicated, so that was the basis." Mr. Russell had no connection to law enforcement.

In excusing Dorothy Jones, one prosecutor indicated that everything was fine except for an ambiguity about a rap sheet and noting that she had some sort of hostility. The second prosecutor added that Ms. Jones volunteered her position as a union official with the United States Postal Service. The State reasoned that, the Postal Service being connected to the government and her being a union individual, she would be anti-employer and anti-government and stated "it was our thinking that in this case, given the fact that the government is involved heavily in the prosecution of the matter that Miss Jones would not be a favorable juror for the State." The fact that Ms. Jones volunteered the information that she was a union official distinguished her from the other jurors.

Initially, the State requested that Curtiss Williams be dismissed for cause[8]. The State noted that Mr. Williams admitted being a felon and being involved in a Chicago Transit Authority robbery, as well as admitting to a charge involving a gun, all issues involved in this case.

James Powell stated that his son had been convicted of robbery. The State felt that since it was an armed robbery charge in the instant case, no matter how much Mr. Powell would try, he would be unable to be fair and impartial. Mr. Powell had no friends or family in law enforcement. Mr. Powell was the only juror to have a child convicted of the same crime as the defendants were charged with.

The State's reason for excluding William Ramos was that, "He himself said he got probation one time for stolen hubcaps" and "that he might have a problem listening to [police officers' testimony] *** with an unbiased attitude." During *voir dire* Ramos had stated that the police had found hubcaps in the trunk of his car. The police told him they were stolen. The police did not believe Ramos when he told them he didn't know the hubcaps were there. Ramos' nephew was murdered three years prior; no one was apprehended. A cousin whom Ramos is not close to is a policeman. Barbara Anderson's son was beaten up by the police, she has a friend who is a public defender,

---

[8]Benson does not contest the exclusion of Mr. Williams as a juror.

and she is opposed to capital punishment[9]. The State felt these responses added up to her possessing biases.

One of the purposes of *voir dire* is to observe the demeanor of the prospective jurors. (*People v. Mitchell* (1992), 152 Ill. 2d 274, 296.) A trial judge is in the best position to observe the demeanor of potential jurors and then evaluate the prosecutor's explanation for exercising a peremptory challenge. (*People v. Young* (1989), 128 Ill. 2d 1, 20.) "The trial court's determination on the ultimate issue of discrimination is a finding of fact which turns on an evaluation of credibility and, therefore, is entitled to great deference on appeal [citation] and will not be reversed unless it is clearly erroneous [citation]." (*People v. Hudson* (1993), 157 Ill. 2d 401, 426.) We find no basis to find that the trial court erred in accepting the State's reasons for excluding the venirepersons.

Prior to trial Lee filed a motion *in limine* requesting that the State be precluded from impeaching his credibility with his prior convictions, a seven-year-old conviction for robbery, a four-year-old conviction for theft, and a two-year-old conviction for possession of controlled substances. The trial court denied the motion and ruled all three convictions were admissible for impeachment purposes. Lee contends that the trial court erred in this decision.

Lee acknowledges that these convictions were not barred by the *per se* aspect of *People v. Montgomery* (1971), 47 Ill. 2d 510[10]. However, he asserts that the trial court's decision rose to an abuse of discretion because the prejudicial impact of the prior convictions far outweighed their probative relevance to credibility, and because the trial court failed to weigh these factors. The State maintains that defendant's argument was not properly preserved for review because defendant failed to testify. We agree.

In *Luce v. United States* (1984), 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460, the Supreme Court held that a defendant who fails to testify cannot challenge on appeal the trial court's ruling on his motion *in limine* requesting that use of his prior convictions for impeachment purposes be forbidden. The court reasoned that "[a]ny possible harm flowing from [the trial] court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative."

---

[9]Benson does not contest the exclusion of Barbara Anderson as a juror.

[10]*People v. Montgomery* (1971), 47 Ill. 2d 510, provides for admission of a prior conviction for purposes of impeachment where (1) the conviction involved a crime which is punishable in excess of one year or involves dishonesty or a false statement; and (2) the trial judge determines that the probative value of the conviction outweighs the prejudicial effect.

(*Luce*, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463.) The court further noted that because an accused's decision whether to testify seldom turns on the resolution of one factor, a reviewing court cannot assume an adverse ruling on the motion motivated defendant to refrain from testifying. Moreover, without benefit of the defendant's testimony in the record, it would be impossible to determine on review whether the error was harmless. *Luce*, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463-64.

Defendant acknowledges that there is some authority for the proposition; however, he maintains that the cases which hold this do so because the record does not clearly reflect the role the ruling played in defendant's decision not to take the stand. We find this argument without merit. In *People v. Gray* (1989), 192 Ill. App. 3d 907, the trial court denied defendant's motion *in limine* to preclude the use of two prior armed robbery convictions for impeachment purposes. Defendant argued that as a result of the trial court's ruling, he did not testify at trial. Applying *Montgomery*, the court found no error was committed in denying the motion. The court further stated:

> "[A] defendant's decision whether to testify at trial cannot be used as a bargaining tool with the trial court regarding its determination to grant or deny the motion to preclude evidence of the prior convictions. The defendant's refusal to testify, standing alone, cannot serve as the basis for a conclusion he is prejudiced." *Gray*, 192 Ill. App. 3d at 916.

The reasoning in *Luce* has been adopted by the fourth district in *People v. Redman* (1986), 141 Ill. App. 3d 691, and *People v. Miles* (1989), 186 Ill. App. 3d 370, and the fifth district in *People v. Rush-Bey* (1987), 152 Ill. App. 3d 17. (See also *People v. Chatmon* (1992), 236 Ill. App. 3d 913.) We continue to follow *Luce* and its progeny in Illinois. Accordingly, we hold defendant's contention of error as to the trial court's ruling on his motion *in limine* was waived by his failure to testify at trial.

■ Lee's prior convictions involve crimes which are probative of his veracity and honesty as a witness. The trial court found that the convictions fell within *Montgomery* and that the State had a right to impeach the defendant with convictions that gave insight into his credibility. Had the issue been properly preserved, we would find no abuse of discretion in the trial court's denial of defendant's motion *in limine*.

In Lee's third contention of error, he argues that he should receive a new trial due to various prejudicial and inflammatory comments made by the prosecutor during his closing arguments. A prosecutor is permitted great latitude in his closing argument. (*People*

*v. Patterson* (1986), 140 Ill. App. 3d 421.) The trial court is in the best position to determine the propriety of closing arguments; therefore, every reasonable presumption must be indulged that the trial court properly exercised discretion. (*People v. Manley* (1991), 222 Ill. App. 3d 896.) Improper remarks will not require reversal of a conviction unless they constitute a material factor in a defendant's conviction. (*People v. Hoddenbach* (1993), 116 Ill. App. 3d 57.) The test employed is whether the jury would have reached a contrary verdict had the improper remarks not been made. (*People v. Manley* (1991), 222 Ill. App. 3d 896.) It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. (*People v. Ammons* (1983), 120 Ill. App. 3d 855.) We do not believe that had any of the complained-of errors not been made the jury would have reached a contrary verdict.

■ Lee asserts that in arguing that he was guilty of attempted murder the prosecutor improperly held up a bullet, falsely intimating that a bullet or gun had been recovered from Lee when, in fact, no gun had been found on or near him. The prosecutor held up a bullet to the jury as he argued that Lee was trying to send a message to Willie Gaddy and that you don't use a gun unless you want to kill someone. Defense counsel objected on the basis that no round or bullet was found on Lee and no bullets were recovered from the scene. The prosecutor responded that there was testimony to that effect. The trial court indicated that the jury heard the testimony and overruled the objection.

In overruling the defendant's objection, the trial court stated:

> "The jury heard the testimony \*\*\*. There may be objections from time to time from counsel \*\*\* as to what the evidence was or wasn't. I want to make it very clear to you that that is your province, that is not mine. You are the fact finders so in many of these situations where there is an objection I am going to overrule the objection but remind you that that is your province to make a determination as to whether you so find."

Testimony at trial indicated that Lee held a silver gun to Shawn Lewis and Willie Gaddy as he robbed them. Although no bullet was recovered from the scene of the crime, three eyewitnesses saw Lee with a gun and two saw him fire a gun. It was a reasonable inference drawn from the evidence that a gun and bullet were used in the shooting. Statements of counsel and argument upon proven fact and circumstance proven or legitimate inference derived from them do not exceed the bounds of proper debate. (*People v. Shum* (1987), 117 Ill. 2d 317.) The trial court reminded the jurors that it was within their province to determine the facts. Moreover, Lee was found not

guilty of attempted murder; thus, any error in failing to sustain an objection to this testimony was harmless.

On rebuttal the prosecutor argued, "He aims a loaded gun at Willie Gaddy and he fires it. If he had missed [*sic*] this might have been a murder trial." The defense objection was sustained, with the court stating, "the jury will disregard that \*\*\* and we're not going to conjecture as to what it could have been." Properly sustaining an objection and instructing the jury to disregard such argument have usually been held sufficient to cure any prejudice. *People v. Gonzalez* (1991), 142 Ill. 2d 481, 493.

Referring to the attempted murder of Willie Gaddy, the prosecutor argued: "[W]hen someone aims a loaded gun at you they intend to kill you." The defense objection was overruled. Lee argues this transformed a permissive inference into a mandatory presumption, one which the trial judge endorsed by overruling the defense objection. Defendant contends that despite the jury's having found Lee not guilty of attempted murder, it infected the remaining counts because it interjected into the case an illegitimate conclusive presumption easily transferred to other aspects of jury deliberations. We disagree. The defendant was found not guilty of the attempted murder charge. We do not find any prejudice to the defendant by the prosecutor's remark nor do we believe it affected the outcome of the remaining counts.

The prosecution argued: "[W]e believe there is no reasonable doubt." Defense counsel objected. The court sustained the objection as to what the State believed. Although the objection was sustained, defendant argues nothing could erase the message the prosecutor had sent to the jury, *i.e.*, that she personally believed that Lee was guilty. A prompt sustaining of an objection will cure any prejudice resulting from an improper remark. *People v. Gonzalez* (1991), 142 Ill. 2d 481, 493.

The prosecutor argued regarding the identifications of the two defendants, concluding, "These guys were pointed out by the victims, police officers." Defense counsel objected that this was not the testimony and the court sustained the objection as to the identification by the police officers. The prosecutor continued to argue regarding the identifications. Defense counsel again objected that this was not the evidence. The trial court responded that it had been explained and "the jury has heard the Court's admonishment." Defendant argues that the State's argument misstated the evidence. The trial court sustained the objection to the testimony. Earlier the court admonished the jurors that they were to determine the facts.

An improper argument is cured or rendered harmless when the trial judge sustains an objection and admonishes the jury to disregard it. *People v. Heflin* (1978), 71 Ill. 2d 525.

A jury instruction was given that closing arguments were not evidence and argument not based on the evidence should be disregarded. In view of the overwhelming evidence of defendant's guilt, it is doubtful that the cumulative effect of the remarks complained of would have materially affected the jury's verdict. Therefore, we find that any error in the prosecutor's remarks constitutes harmless error.

In his second contention of error, Benson argues that he was not found guilty of armed robbery beyond a reasonable doubt. Benson argues that the identification testimony did not rise to the level of proof of guilt beyond a reasonable doubt.

It is the function of the jury as the trier of fact to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Young* (1989), 128 Ill. 2d 1, 51.) It is peculiarly within the province of the jury to resolve any conflicts in the evidence, and this court will not substitute its judgment for that of the jury on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Young*, 128 Ill. 2d at 51.) The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261.

Based on the above standard, we must reject Benson's claim that the State failed to prove him guilty beyond a reasonable doubt. The identification of the accused by a single, credible witness is sufficient to sustain the conviction of a defendant. (*People v. Palmer* (1989), 188 Ill. App. 3d 414, 421.) The test of a positive identification is whether the witness had the opportunity to view the offender for a sufficient length of time under adequate conditions for observation. The conditions need not be perfect and the observation need not be prolonged. (*Palmer*, 188 Ill. App. 3d at 421.) The reliability of identification testimony is an issue of fact for the jury to resolve. (*People v. Jackson* (1977), 69 Ill. 2d 252.) The two eyewitnesses, Gaddy and Lewis, had ample opportunity to view Benson in the course of the robbery. The jury had the opportunity to hear their testimony and determine their credibility. Willie Gaddy also viewed Benson as he followed him out of the building after the robbery. He pointed out Benson to a passing police car. Officer Boddie chased Benson and eventually apprehended him.

Defendant further argues that the testimony of the two eyewitnesses was severely impeached by statements they signed several weeks after the robbery which completely exonerated Benson of any participation in the crime. However, Lewis and Gaddy both testified at trial that they did not read these statements when they signed them and that they only signed the statements because the man had said that they would get their money back. It was within the province of the jury to determine the credibility of such testimony.

In addition, there was testimony that Benson fled upon being approached by the police. Flight from the scene of a crime is a form of circumstantial evidence which is based upon an inference that such flight bears a reasonable relation to a consciousness of guilt. *People v. Clark* (1979), 79 Ill. App. 3d 640, 650.

In his third contention of error, Benson argues he was denied his due process right to a fair trial where a police officer repeatedly referred to Benson as the offender in front of the jury and where testimony from another police officer improperly suggested that Benson had been involved in criminal conduct other than the offense for which he was being tried.

At trial the State presented evidence by various police officers in part to describe the circumstances under which Benson was arrested. Benson asserts that by repeatedly referring to him as "the offender," one of the investigating officers improperly made the legal conclusion in front of the jury that Benson had committed the crimes for which he was being tried. Benson also points to the fact that when describing how one of the complainants was unable to identify Benson from a photo array, another police officer informed the jury that the picture of Benson used in the photo array was from a previous arrest of Benson, thus suggesting that Benson had previously been involved in other criminal activity. Benson argues that considering the closeness of the evidence presented against him, the cumulative effect of this improper testimony resulted in reversible error.

■ Benson did not properly object to this testimony at trial; therefore, his claim of error is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176.) We further find that the plain error doctrine is inapplicable here, as the evidence is not closely balanced. Moreover, the testimony merely recounted the course the police took in apprehending the defendants[11].

---

[11]A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest when such testimony is necessary and important to fully explain the State's case to the trier of fact. *People v. Simms* (1991), 143 Ill. 2d 154, 174.

For all the reasons set forth above, we affirm the convictions of Albert Benson and Cornelius Lee.

Affirmed.

McNULTY and COUSINS, JJ., concur.