THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IGUSTER NUNN *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—91—0807

Opinion filed June 22, 1995.

Kenneth L. Jones, of State Appellate Defender's Office, of Chicago, for appellants Iguster Nunn, Paris Lee Nunn, Leonard Thomas, and William Sewell.

Joshua Sachs, of Chicago, for appellant Leonard Collier.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant Paul Thomas.

M. Jacqueline Walther, of Kielian & Walther, of Chicago, for appellant Gregory Young.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

In 1984, after a jury trial, the defendants in this case were convicted for the murder of John Thomas. The convictions were affirmed by this court but remanded for a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. (*People v. Nunn* (1989), 184 Ill. App. 3d 253, 541 N.E.2d 182.) On remand, the trial court determined that the defense had made a *prima facie* case of discrimination and asked the State to provide race-neutral reasons for the exercise of each of the peremptory challenges that the State used to exclude 28 minority venirepersons. After the State articulated several reasons for excluding each juror, the trial court concluded that the State had not violated *Batson* and therefore upheld the murder convictions. The defendants appeal this decision. We affirm the majority of the decision of the trial court but remand this matter for the trial court to make findings regarding the challenges to several venirepersons and the prospective alternate jurors.

On September 7, 1983, eight men were seen beating John Thomas

with weapons including a cane, a pipe and a chain. Because of the injuries which he sustained, Thomas soon died.

The men were subsequently tried for this crime in a joint trial. Seven of the men, the defendants in this case, William R. Sewell, Iguster Nunn, Paris Lee Nunn, Leonard Thomas, Paul Thomas, Gregory Young and Leonard Collier, were tried by a jury. All of these defendants were African-American.

Jury selection began on October 30, 1984. Of the total venire, composed of 73 individuals, 44 were white and 29 were African-American. During jury selection, the State exercised 26 peremptory challenges; 22 of those 26 challenges, approximately 85%, were used to exclude African-American venirepersons. After *voir dire*, four African-American jurors and eight white jurors were seated. The parties also selected three alternate jurors. The State used seven peremptory challenges during the selection of alternate jurors. Six of the challenges, approximately 86%, were used to exclude African-American venirepersons. Ultimately, one alternate juror was white and two were African-American.

During *voir dire*, defense counsel repeatedly asked the court to declare a mistrial, because the State was using its peremptory challenges to keep African-Americans from serving on the jury. The court asked defense counsel if they had "authority" to support their position. Because this occurred before the decision in *Batson*, defense counsel could provide no authority to support their position and the trial court denied their motion.

Once jury selection was completed, a joint trial was conducted. After the trial, the jury found defendants William R. Sewell, Iguster Nunn, Paris Lee Nunn, Leonard Thomas, Paul Thomas, Gregory Young and Leonard Collier guilty of murder. The jury also found defendants Leonard Collier, Gregory Young and Paris Lee Nunn guilty of armed robbery.

The defendants appealed their convictions and sentences. The convictions and sentences were affirmed. (*People v. Nunn* (1989), 184 Ill. App. 3d 253, 541 N.E.2d 182.) However, this court remanded the matter for a *Batson* hearing.

> "Each of the defendants who was tried by a jury maintains that the State exercised its peremptory challenges to systematically exclude blacks from the jury. [Citation.] Because this argument presents a factual question properly resolved by the trial court, we remand the matter with respect to each of these defendants for a *Batson* hearing. [Citations.] If the court determines on remand that the State did not exercise its peremptory challenges in a racially discriminatory manner, these defendants' convictions

shall stand affirmed. If the trial court determines on remand that the State did exercise its peremptory challenges in a racially discriminatory fashion, the trial court shall hold new trials with respect to each of these defendants." *Nunn*, 184 Ill. App. 3d at 276-77, 541 N.E.2d at 198.

The *Batson* hearing was conducted in 1991. After the defendants had presented arguments and evidence, the trial court determined that the defendants had established a *prima facie* case of discrimination. The burden then shifted to the State to provide race-neutral reasons for challenging each of the 28 prospective minority jurors that it excused. The State provided several reasons for excluding each of the minority venirepersons. After the State had provided its reasons, the trial court reviewed the State's reasons for excluding each of the minority venirepersons, with the exception of several venirepersons and the prospective alternate jurors, and determined that there had been no violation of the defendants' equal protection rights. The court therefore refused to order new trials. The defendants appeal the trial court's decision.

The defendants were tried on these charges in 1984 and subsequently convicted. While the defendants' appeals were pending, *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, were decided. *Batson* has been held to apply to cases pending on direct review when *Batson* was decided, such as this case. *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708; *People v. Harris* (1994), 164 Ill. 2d 322, 329, 647 N.E.2d 893, 897.

■ "In *Batson* ***, the United States Supreme Court reaffirmed the principle that the State denies a defendant who is a member of a racial minority equal protection of the laws when it puts him on trial before a jury from whom members of his race have been purposefully excluded." (*People v. Andrews* (1993), 155 Ill. 2d 286, 292, 614 N.E.2d 1184, 1188.) Therefore, when a defendant claims that the State discriminated in the process of jury selection, courts employ the three-step *Batson* test. (*Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24.) "Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination." (*Purkett v. Elem* (1995), 514 U.S. 765, 767-68, 131 L. Ed. 2d 834, 839, 115 S. Ct. 1769, 1770-71.) We consider each of the steps of this analysis, as it relates to the facts before us, in turn.

# I

●2 First, the defendant must establish a *prima facie* case by showing relevant circumstances that raise a reasonable inference that the State used peremptory challenges to exclude venirepersons because of their race. *People v. Thornton* (1993), 256 Ill. App. 3d 708, 711, 628 N.E.2d 1063, 1065-66.

Here, the trial court found that the defendants had made a *prima facie* case and then asked the State to provide race-neutral reasons for using each of its challenges. The trial court then made findings and ruled on the issue of discrimination. Therefore, there is no need for this court to review the issue of whether the defendants have established a *prima facie* case. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866; see also *People v. Thomas* (1994), 266 Ill. App. 3d 914, 919-20, 641 N.E.2d 867, 871-72. But see *People v. Campbell* (1992), 240 Ill. App. 3d 179, 608 N.E.2d 229.

# II

■ Second, if the defendant has made out a *prima facie* case, the State must then provide race-neutral reasons for excluding the jurors in question. (*People v. Benson* (1994), 266 Ill. App. 3d 994, 998, 641 N.E.2d 617, 621.) While the prosecution is required to give race-neutral reasons at the second stage, these reasons need be neither "persuasive" nor "plausible" to satisfy constitutional requirements. (*Purkett*, 514 U.S. at 767, 131 L. Ed. 2d at 839, 115 S. Ct. at 1771.) To satisfy a *Batson* challenge, the reason provided need not be a "reason that makes sense" but must only be a reason that is race-neutral. (*Purkett*, 514 U.S. at 769, 131 L. Ed. 2d at 840, 115 S. Ct. at 1771.) " 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett*, 514 U.S. at 768, 131 L. Ed. 2d at 839, 115 S. Ct. at 1771, quoting *Hernandez v. New York* (1991), 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406, 111 S. Ct. 1859, 1866.

The State excused 28 minority venirepersons, questioned for service as jurors and alternate jurors, through the use of peremptory challenges. The defendants contest each of these challenges.

■ The reasons provided by the State for excusing these prospective jurors are numerous and varied. Because of the volume of reasons presented in this matter for our review, we find ourselves

constrained in setting forth our analysis. (134 Ill. 2d R. 23.) However, we do note that some of the many reasons provided by the State included such reasons as the following: (1) the venireperson appeared confused; (2) the venireperson had ties to individuals about the same age as the defendants; (3) the venirepersons lived in the same general vicinity as the defendants; or (4) the venirepersons were teachers or social workers. The defendants have not pointed us to any reasons that are clearly not race-neutral and our review of the record indicates that, on its face, none of the reasons provided by the State were characteristic of any given race. The reasons must therefore be accepted as race-neutral, according to the instruction set forth in *Purkett.*

Nonetheless, the defendants argue that the prosecutors' inability to recall their actual reasons for excluding the venirepersons is automatically grounds for a new trial.

While we agree with the defendants that, during a *Batson* hearing, the prosecutor must give his or her actual reasons for excusing a particular venireperson, we find no reason to conclude that the prosecutor in this case was not able to construct his actual reasons. During the hearing, the prosecutor indicated that he had reviewed the transcript of the *voir dire*, the State's briefs filed in the earlier appeal and had consulted with the other prosecutor who had tried the case. The prosecutor then stated that he believed that he could articulate some of the reasons for excluding the venirepersons.

The defendants do not contest the fact that the prosecutor was given the opportunity to refresh his recollection. After refreshing his recollection, it appears clear to us that the prosecutor was able to discern his reasons for excusing the venirepersons. We therefore conclude that the fact that the prosecutor had to reconstruct his reasons for excusing the venirepersons was not such error as to warrant a new trial.

The cases cited by the defendants are not dispositive of the issue. In *People v. Charles* (1992), 238 Ill. App. 3d 752, 758, 606 N.E.2d 603, 607, quoting *People v. Harris* (1989), 129 Ill. 2d 123, 181, the court held that the State must provide a race-neutral reason for excluding each juror and may not rebut the defendant's *prima facie* case by stating that " 'it does not know why it exercised its peremptory challenges.' " Unlike the prosecutor in *Charles*, though, the prosecutor in this case did not attempt to rebut the defendants' *prima facie* case of discrimination by stating that he did not know why he exercised the peremptory challenges. Instead, the prosecutor attempted to reconstruct his thought processes and then provide his actual reasons.

The defendants also cite *People v. Harris* (1989), 129 Ill. 2d 123,

544 N.E.2d 357, *aff'd on remand* (1994), 164 Ill. 2d 322, 647 N.E.2d 893, as support for their argument. In *Harris*, the court stated, "[A] court should not presume, or infer from the facts of the case, that an unarticulated neutral explanation exists. [Citation.] Rather, a court must focus its inquiry on the reasons actually articulated by the State." (*Harris*, 129 Ill. 2d at 184, 544 N.E.2d at 384.) The *Harris* court used this language to explain that the court may not infer reasons for exercising a peremptory challenge, not that the prosecution may not reconstruct the reasons that support its use of a peremptory challenge.

## III

Third, after the State has articulated its reasons, the trial court must determine "whether the opponent of the strike has proved purposeful racial discrimination." *Purkett*, 514 U.S. at 767, 131 L. Ed. 2d at 839, 115 S. Ct. at 1771.

■ At the third stage, it becomes the function of the trial court to assess the "genuineness" of the State's explanation and the credibility of the State in offering that explanation. (*Purkett*, 514 U.S. at 769, 131 L. Ed. 2d at 840, 115 S. Ct. at 1771-72.) It is at the third stage of the analysis, then, that the trial court might find that explanations provided by a prosecutor are pretextual. (*Purkett*, 514 U.S. 765, 131 L. Ed. 2d 834, 115 S. Ct. 1769.) As the dissent in *Purkett* explains, *Purkett* stands for the proposition that "[a] trial court must accept [the] neutral explanation unless a separate 'step three' inquiry leads to the conclusion that the peremptory challenge was racially motivated." *Purkett*, 514 U.S. at 775, 131 L. Ed. 2d at 843, 115 S. Ct. at 1774 (Stevens, J., dissenting).

■ The trial court reviewed the numerous reasons the State had provided for excusing the prospective jurors, with the exception of several venirepersons. Our review of the record made by the trial court indicates that the trial court occasionally made errors when making its findings. For example, when reviewing the reasons the State offered for excusing Marie Newman, the trial court found that one of the reasons was that Newman appeared confused during questioning. After reviewing the record, we cannot see that Newman ever expressed confusion about the meaning of any *voir dire* questions. In fact, in its brief to this court, the State admits that the prosecutor who gave this reason was mistaken.

However, for each of the prospective jurors whom the trial court reviewed, the court found at least one reason for excusing that juror that was supported by the record. For example, the State asserted, as an additional reason for excluding Marie Newman, "Even more com-

pelling, though, is the fact she was a widower and she was living in a rough area in the City of Chicago. She was living alone. She did not have any children living with her." The State expressed concern that she was living in an area that had gang activity and was afraid that Newman would be intimidated.

When reviewing the State's reasons for excluding Newman, the court found that she lived on the west side of Chicago, in a rough area, "possibly a gang infested area." The court concluded that this was a legitimate reason.

Newman stated during *voir dire* that she was a 57-year-old widowed woman living on the west side of Chicago. She had one daughter who was 22 years old, married and living in Texas. The court's findings are therefore supported by the record.

The trial court was also in a position to assess the credibility of the prosecutor when he offered those reasons. "The trial court's determination on the issue of discrimination is a finding of fact which in a large part turns on an evaluation of credibility and, therefore, is entitled to great deference." (*People v. Banks* (1993), 241 Ill. App. 3d 966, 971, 609 N.E.2d 864, 868.) We decline to disturb the findings of the trial court with respect to all of the prospective jurors and therefore affirm the trial court's decision that the defendants did not carry their burden of showing purposeful discrimination. *Purkett*, 514 U.S. 765, 131 L. Ed. 2d 834, 115 S. Ct. 1769.

However, while reviewing the challenges to 28 prospective jurors and the many reasons for excusing them provided by the State, the trial court neglected to make findings at the *Batson* hearing regarding the challenge of the following venirepersons: Larry Gates, Althea Edwards, Donaver Goins, and Dwayne Robinson. The trial court also neglected to make any findings with respect to the prospective alternate jurors. (See *People v. Mitchell* (1992), 152 Ill. 2d 274, 604 N.E.2d 877 (where the reasons for excluding alternate jurors were considered as important as the reasons for excluding prospective jurors, for purposes of a *Batson* hearing).) At the third stage of a *Batson* hearing, the trial court must make findings reciting its basis for determining the "genuineness" of the prosecutor's "motive" in challenging these prospective jurors. (*Purkett*, 514 U.S. at 769, 131 L. Ed. 2d at 840, 115 S. Ct. at 1771-72.) Having no findings from the trial court to review on this issue, we remand for the limited purpose of allowing the trial court to make findings regarding the State's reasons for excusing these venirepersons and the minority alternate jurors.

For the above reasons, we affirm the decision of the trial court with respect to the State's dismissal of each of the jurors for whom

the court made findings. However, this matter is remanded so the trial court can make findings with respect to the State's challenge of the venirepersons identified and the minority alternate jurors.

Affirmed in part; remanded in part.

HOFFMAN, P.J., and CAHILL, J., concur.