THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JULIO MARTINEZ, Defendant-Appellant.

First District (3rd Division) No. 1—99—0553

Opinion filed December 6, 2000.

Michael J. Pelletier and Erin Stone, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, Christina C. Frenzel, William D. Carroll, and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant Julio Martinez was found guilty of three counts of aggravated criminal sexual assault and one count of armed robbery. Defendant was sentenced to 12 years' imprisonment on each of his three convictions for aggravated criminal sexual assault and 6 years for armed robbery, the sentences to be served consecutively. On appeal, defendant contends that the trial court erred in finding that the State offered a race-neutral reason for excluding a minority juror and in denying him his right to present a defense by limiting cross-examination of a key State witness and providing the jury with verdict forms that contained the term "victim." In a supplemental brief, defendant contends that his consecutive sentences violate his due process right because he was subjected to increased punishment

based on a factor that had not been charged, that was not presented to the jury, and that was not proven beyond a reasonable doubt. For the reasons set forth below, we remand this cause for further proceedings.

## STATEMENT OF FACTS

In this opinion, we discuss only those facts relevant to the issue of discrimination in the selection of the jury. Defendant was charged with numerous counts of aggravated criminal sexual assault, armed robbery, kidnapping, and aggravated battery, based upon events that occurred on February 26, 1997. Jury selection began on November 30. During jury selection, the State, using a peremptory challenge, excused Leanna Lee, a black female approximately 65 years old. Lee had no hobbies and read the Chicago Times, Chicago Tribune, Defender, Jet, and Ebony publications. Defendant objected to the State's challenge, arguing that the State was striking all minorities. When asked by the trial court for a reason, the State responded that it was excusing Lee because "[s]he indicated one of the publication[s] she is [sic] likes to read is the Defender. Based on that representation, we ask to excuse her." The trial court found this to be a race-neutral reason. Defendant then argued that the Defender was like any other newspaper—it shows facts and gives facts. According to defendant, excusing Lee on this basis was like excusing any other juror because he or she read the Tribune. Defendant therefore maintained that the State's reason was not race-neutral. The trial court again found that the State's reason was race-neutral, stating "race neutral basis if it [is] not based upon race."

Following a trial, the jury returned guilty verdicts on three counts of criminal sexual assault and one count of armed robbery.

On January 5, 1999, defendant filed a motion for a new trial, alleging, *inter alia*, error in jury selection. At the hearing on defendant's motion for a new trial, with respect to the jury selection, the trial court stated that it had considered the three *Batson* steps and concluded that the State gave a race-neutral reason for excusing Lee. The trial court subsequently denied defendant's motion. This appeal followed.

## ANALYSIS

Defendant contends that the State engaged in racial discrimination during jury selection in violation of the holding of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Defendant argues that the prosecutor's reason for excusing Leanna Lee was based solely on the fact that she read the Defender, and this reason was clearly pretextual. Defendant contends that the State failed to explain why someone who reads the Defender is an undesirable juror.

According to defendant, the Defender is a mainstream newspaper, owned and operated by blacks, and is the oldest newspaper directed toward blacks in the country.[1] Defendant further points out that the prosecutor did not excuse two other jurors who read mainstream newspapers. Defendant also argues that the trial court failed to conduct the proper *Batson* analysis, stopping at the second step, rather than making any attempt to scrutinize the State's reason for excusing Lee and to ascertain the genuineness of the State's reason.

The State contends that the trial court conducted the proper analysis and concluded that the State's reason was not pretextual. The State argues that there is nothing in the record to show that the prosecutor was familiar with the Defender or knew that it was owned and operated by blacks or directed toward blacks. According to the State, it perceived, based on the philosophy of the name, that readers of the Defender might not be predisposed to convict even if the evidence warranted a conviction. The State also points out that two other jurors were accepted who read black publications, including Essence, Black Enterprise, and Ebony.

■ In *Batson*, the United States Supreme Court set forth a three-part analysis to determine whether peremptory challenges were used to remove venirepersons based on race. "First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race." *People v. Easley*, 192 Ill. 2d 307, 323, 736 N.E.2d 975 (2000). "Second, if the defendant has made a *prima facie* showing, the burden then shifts to the State to provide a race-neutral explanation for excluding each venireperson in question. A race-neutral explanation is one based upon something other than the race of the venireperson. In assessing an explanation, the trial court focuses on the *facial* validity of the prosecutor's explanation. The explanation need not be persuasive, or even plausible." (Emphasis in original.) *Easley*, 192 Ill. 2d at 323-24. Instead, the reason need only be facially race neutral. *People v. Crockett*, 314 Ill. App. 3d 389, 399, 731 N.E.2d 823 (2000). "A legitimate reason is not a reason that makes sense, but rather is a reason that does not deny equal protection. Absent an inherent discriminatory intent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Easley*, 192 Ill. 2d at 324. See also *Purkett v. Elem*, 514 U.S. 765, 768, 131 L. Ed. 2d 834, 840, 115 S. Ct. 1769, 1771 (1995).

---

[1]Attached to defendant's brief on appeal is an Internet download of the history of the Defender and its purpose. This document was not presented to the trial court and, thus, is outside the record and we do not consider it. *People v. Haas*, 100 Ill. App. 3d 1143, 1149, 427 N.E.2d 853 (1981).

However, even though the reasons given by the prosecutor may be facially race neutral, this does not mean the reasons were genuine, nonpretextual, or that the State did not engage in racial discrimination in the jury's selection. *Crockett*, 314 Ill. App. 3d at 399. Thus, the trial court must conduct *Batson's* third-step analysis. At this step, the trial court "weighs the evidence in light of the *prima facie* case, the prosecutor's reasons for challenging the venireperson, and any rebuttal by defense counsel. [Citation.] The court must determine whether the defendant has met his or her burden of proving purposeful discrimination." *Easley*, 192 Ill. 2d at 324. It is at this step "that the persuasiveness of the justification becomes relevant" (*Purkett*, 514 U.S. at 768, 131 L. Ed. 2d at 839, 115 S. Ct. at 1771), and the trial court must assess the genuineness of the State's explanation along with the State's credibility in offering the explanation (*People v. Nunn*, 273 Ill. App. 3d 519, 525, 652 N.E.2d 1146 (1995)). The trial court is free to consider all the circumstances of the trial, evaluate the prosecutor's credibility, and reexamine the explanation offered by the State. *Crockett*, 314 Ill. App. 3d at 397. "The trial court must make ' "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case." ' " *People v. Fair*, 159 Ill. 2d 51, 72, 636 N.E.2d 455 (1994), quoting *People v. Harris*, 129 Ill. 2d 123, 174-75, 544 N.E.2d 357 (1989), quoting *People v. Hall*, 35 Cal. 3d 161, 167, 672 P.2d 854, 858, 197 Cal. Rptr. 71, 75 (1983). The trial court's determination is afforded great deference and we will not reverse its determination unless it is clearly erroneous. *Crockett*, 314 Ill. App. 3d at 400.

In the present case, although the State argues that at the third step the court must assess the facial validity of the proffered reason, this is an erroneous statement of law and the *Batson* process. At the second step, the court focuses on the facial validity. At the third step, the court must evaluate the persuasiveness and genuineness of the reason. At this third step, the court cannot just accept the proffered reason without evaluating it against the circumstances of the case.

■ Based upon a review of the record, particularly the trial court's comments, we conclude that the trial court failed to conduct the proper analysis under *Batson*. In particular, at the time of jury selection, defendant objected to the State's peremptory challenge of Lee. The State then offered a reason, which the trial court found race neutral. Thereafter, defendant presented additional argument and the trial court again ruled that the reason was race neutral, specifically stating, "[R]ace neutral basis if it's not based upon race." This statement satisfies the second step required by *Batson*. "A race-neutral explanation is one based upon something other than the race of the venireper-

son." *Easley*, 192 Ill. 2d at 324. However, simply because a reason is facially valid does not mean that the reason is genuine or nonpretextual. The trial court, in the case at bar, never evaluated, pursuant to the third step set forth in *Batson*, the genuineness or persuasiveness of the State's proffered reason. The trial court merely accepted the State's reason because it found that the reason was not based on race.

Our conclusion is supported by the following comments by the trial court at the hearing on defendant's motion for a new trial:

> "The Supreme Court determined that once a prima facie case of racial discrimination was established, step one, the burden of production shifts to the proponents of the strike to come forward with a race-neutral explanation. Step 2, if a race-neutral explanation is tendered, the trial court must decide, *step 3*, whether the opponent of the strike has proved purposeful racial discrimination. *The process does not demand an explanation which is persuasive or even plausible. At this time of the inquiry the issue is the facial validity of the prosecutor's explanation.* Unless a discriminatory intent is inherent in the prosecutor's explanation, *the reason offered will be deemed race neutral.*
>
> \*\*\*
>
> In this case the court finds that the State gave race-neutral reasons [*sic*] for purposes of excluding Miss Lee \*\*\*. Court finds no error in the manner of jury selection." (Emphasis added.)

The trial court's comments demonstrate that it only completed the second-step evaluation pursuant to *Batson*. Although the trial court stated it was conducting the third-step analysis, it is clear that the court did not in fact conduct the third step.

Moreover, although the State argues on appeal that it perceived, based on the philosophy of the Defender, that the Defender's readers might not be predisposed to convict even if the evidence warranted a conviction, the State never made this argument at trial; the State simply stated that it was dismissing Lee because she read the Defender. The record shows that the State gave no other explanation for its excusal of Lee, nor did the trial court make any additional inquiry. Also, while the State, during oral argument before this court, did not agree that the Defender was a mainstream newspaper, at the time defendant objected and argued to the trial court that the Defender was a mainstream newspaper, the State remained silent. This silence could reasonably be viewed as an admission by the State that it agreed that the Defender was a mainstream publication and, therefore, was like any other mainstream newspaper or publication. In any event, the name of the Defender, in and of itself, must have triggered something in the prosecutor's mind to cause him to excuse Lee on the basis of this publication. However, the trial court, based on the record before

us, did not conduct the third step of *Batson* and, therefore, the record is inadequate for this court to determine whether the State's reason was pretextual or not.

Accordingly, based on the record and the trial court's apparent failure to conduct the proper *Batson* analysis, we remand this cause to the trial court for an expedited hearing for the limited purpose of allowing the trial court to conduct the proper *Batson* analysis and make the requisite findings based on the record as it now exists. See *Nunn*, 273 Ill. App. 3d at 526 ("the trial court must make findings reciting its basis for determining the 'genuineness' of the prosecutor's 'motive' in challenging these prospective jurors. [Citation.] Having no findings from the trial court to review on this issue, we remand for the limited purpose of allowing the trial court to make findings regarding the State's reason for excusing these venirepersons ***"). Because we are remanding for further *Batson* proceedings, our supreme court has directed that " 'the correct procedure' is for this court to withhold disposition of other unrelated issues, retaining jurisdiction to consider them after the *Batson* proceedings." *People v. Ramirez*, 230 Ill. App. 3d 231, 238, 595 N.E.2d 12 (1992). We retain jurisdiction to review the trial court's ruling after remand and to address the other issues raised by defendant in this appeal. The trial court shall file its findings and conclusion with the clerk of this court within 60 days of its decision, along with a report of proceedings after remand. *People v. Blackwell*, 164 Ill. 2d 67, 76, 646 N.E.2d 610 (1995). Thereafter, defendant and the State will be allowed to supplement their briefs currently before us based on the trial court's conclusion. *People v. Wilson*, 273 Ill. App. 3d 71, 77, 652 N.E.2d 405 (1995).

## CONCLUSION

For the reasons stated, we remand this cause to the circuit court of Cook County for proceedings consistent with this opinion.

Remanded, with directions.

CERDA and WOLFSON, JJ., concur.