(No. 67718.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. LAWRENCE ANDREWS, Appellee and Cross-Appellant.

*Opinion filed May 20, 1993.—Rehearing denied June 28, 1993.*

FREEMAN, J., took no part.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Kenneth L. Jones, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee and cross-appellant.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Lawrence Andrews, was convicted in a jury trial in the circuit court of Cook County of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2), and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). The jury which convicted Andrews failed to reach a unanimous decision on whether to impose the death penalty. The trial court then sentenced the defendant to an extended term of 70 years' imprisonment on the murder conviction, 30 years' imprisonment on the armed robbery conviction, and 5 years' imprisonment on the aggravated battery convic-

tion. The sentences were to run concurrently. The defendant appealed.

While the defendant's appeal was pending in the appellate court, the United States Supreme Court handed down its decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The appellate court applied *Batson* to the defendant's case. (See *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (holding that *Batson* would apply to all cases pending on direct review at the time *Batson* was decided).) The court concluded that the defendant had established a *prima facie* case of racial discrimination in the manner in which the State exercised its peremptory challenges during jury selection, in violation of *Batson*. (*People v. Andrews* (1988), 172 Ill. App. 3d 394, 404.) The appellate court further concluded that the defendant was properly sentenced to an extended term on his murder conviction. *Andrews*, 172 Ill. App. 3d at 401.

The appellate court remanded the cause to the trial court with directions to conduct a hearing to allow the State to come forward with race-neutral reasons for the use of its peremptory challenges. (*Andrews*, 172 Ill. App. 3d 394.) The defendant and the State cross-appealed to this court. We concluded that the appellate court erred in deciding whether a *prima facie* case of racial discrimination had been established pursuant to *Batson* and that the defendant was not eligible for an extended-term sentence. (*People v. Andrews* (1989), 132 Ill. 2d 451 (*Andrews I*).) This court retained jurisdiction and remanded the cause to the trial court for a hearing to allow the defendant the opportunity to establish a *prima facie* case of racial discrimination and for resentencing.

On remand, the trial court determined, following a hearing, that the defendant had failed to establish a *prima facie* case of racial discrimination. The trial court also resentenced the defendant to 40 years' imprison-

ment for murder and 20 years' imprisonment for armed robbery, to run consecutively, and 5 years' imprisonment for aggravated battery, to run concurrently. This court reversed the trial court's determination that the defendant failed to establish a *prima facie* case of racial discrimination. (*People v. Andrews* (1992), 146 Ill. 2d 413 (*Andrews II*).) The court again retained jurisdiction and remanded the cause to the circuit court for a hearing to permit the State to come forward with race-neutral explanations for the use of its peremptory challenges. The trial court found that the explanations advanced by the State for its use of peremptory challenges against certain venire members were race neutral. This court issued an order directing the parties to file briefs on the issue of whether the State's explanations were sufficient to rebut the defendant's *prima facie* case of racial discrimination. This cause now comes before this court for the third time.

The sole issue presented for our review is whether the State advanced race-neutral explanations for the exercise of its peremptory challenges sufficient to rebut the defendant's *prima facie* case of racial discrimination. Because of the limited nature of our review, only a brief recitation of the facts surrounding the crimes for which the defendant was convicted is necessary. A more detailed recitation of the facts can be found in *People v. Andrews* (1988), 172 Ill. App. 3d 394. On February 20, 1984, the murder victim, Richard Steinbrecher, and his girlfriend, Angela Atiles, exited the Eisenhower Expressway at Kostner Avenue in Chicago. Steinbrecher and Atiles, who were both white, stopped at a traffic signal. While they waited for the light to change, two black men, one of whom Atiles identified as the defendant, approached the vehicle. The defendant entered the automobile and pointed a gun at Steinbrecher and Atiles. The defendant then fatally shot Steinbrecher, hit Atiles

in the eye with the gun and demanded money from Atiles. Atiles gave the defendant all the money she had, which was seven dollars, and the defendant and the other man left.

During jury selection prior to the defendant's trial, the State exercised 8 of the 14 peremptory challenges allotted to it. (See 134 Ill. 2d R. 434(d).) The State used all eight of those peremptory challenges to excuse black members of the venire. The State's peremptory strikes against black venire members were not exercised consecutively. Rather, they occurred in between the State's acceptance of black venire members. The jury which convicted the defendant was comprised of three black and nine white jurors. This court found that the State's use of eight out of the eight peremptory challenges which it exercised to excuse black members from the venire constituted a *prima facie* case of racial discrimination. (*Andrews II*, 146 Ill. 2d at 436.) As stated, the court remanded this cause to the trial court for a hearing at which the State was required to articulate race-neutral reasons for excusing the eight black venire members.

At the hearing, the State, which was represented by the same assistant State's Attorney who had represented the State at Andrews' trial, explained what qualities it had been looking for in the venire members who would be selected to hear the case. The State noted that because it was seeking the death penalty, it wanted jurors who were mature and would not be afraid to make a difficult judgment about another person. According to the State, it believed that those venire members who were self-employed or who had prior jury service would have those qualities. The State further explained that it did not want jurors the same age as the defendant, who could more easily identify with him, or jurors who might feel sympathy toward the defendant because they had children his age.

Finally, the State explained that it had anticipated during jury selection that the defendant would assert at his trial that he had signed a confession only because police had beaten him. Because of the nature of the defendant's anticipated defense, the State wanted jurors who knew and were favorably disposed toward police officers. In addition to explaining the general qualities that it was looking for in jurors, the State articulated specific reasons for excusing each of the venire members against whom it exercised its peremptory challenges. Additional facts with respect to individual venire members will be included later in this opinion as necessary. Following the hearing, the trial court found that the explanations presented by the State were "credible, non-pretextual, race-neutral, satisfactory and acceptable under *Batson v. Kentucky*," and sufficient to rebut the defendant's *prima facie* case of racial discrimination.

In determining whether the explanations advanced by the State were sufficient to rebut the defendant's *prima facie* case of racial discrimination, we keep in mind the following basic principles of law. In *Batson*, 476 U.S. at 85, 90 L. Ed. 2d at 80, 106 S. Ct. at 1716, the United States Supreme Court reaffirmed the principle that the State denies a defendant who is a member of a racial minority equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded. In so holding, the Court rejected the evidentiary standard previously enunciated in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. The *Swain* standard required a defendant to show a systematic and purposeful pattern of excluding venire members from the jury-selection process on the ground of race in "case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." (*Swain*, 380 U.S. at 223, 13 L. Ed. 2d at 774, 85 S. Ct. at 837.) In *Batson*,

the Court held that a defendant would be able to establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) Since *Batson*, the Court has recognized that race-based exclusion of jurors through the use of peremptory challenges is impermissible even where the defendant and the excluded venire members do not share the same race. *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364.

Once a defendant makes a *prima facie* showing of discrimination, the burden shifts to the State to rebut the defendant's *prima facie* case by coming forward with race-neutral explanations for challenging the venireperson allegedly excluded because of his or her race. (*Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) The trial court must then consider those explanations and determine if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.

While the explanations advanced by the State need not rise to the level of a challenge for cause, a mere assertion of nondiscriminatory motive or of good faith in exercising challenges will not rebut a *prima facie* case. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) The prosecutor's explanation must demonstrate that the excluded venire members exhibited a "specific bias" related to the particular cause to be tried, other than that their shared race with the defendant may have biased them in favor of the defendant. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) In reviewing the trial court's finding of whether the defendant established purposeful discrimination, we are mindful that a trial court's determination is a finding of fact and will not be

overturned on review unless it is found to be clearly erroneous. (*Hernandez v. New York* (1991), 500 U.S. 352, 369, 114 L. Ed. 2d 395, 412, 111 S. Ct. 1859, 1871; *People v. Ramey* (1992), 151 Ill. 2d 498, 519; *People v. Hope* (1992), 147 Ill. 2d 315, 321.) We note that the exclusion of even one minority venireperson on account of race is unconstitutional and will require reversal of the conviction below. (*People v. Harris* (1989), 129 Ill. 2d 123, 175.) We therefore must examine the explanations offered by the State for excluding each of the eight black venire members against whom it exercised a peremptory challenge. We note that, at the hearing on remand from *Andrews II*, the State offered at least two, and in most cases three, explanations for excusing each of the venire members against whom it exercised a peremptory challenge. None of the State's explanations made reference to a venire member's race. Resolution of the issue now before us, however, requires only that we accept one of the explanations advanced by the State with respect to each venire member. See, *e.g., People v. Mitchell* (1992), 152 Ill. 2d 274, 300; *People v. Harris* (1989), 129 Ill. 2d 123, 176-78.

### Jerry Taylor and Juanita Norrington

The State explained that it excused Jerry Taylor, a 42-year-old male, and Juanita Norrington, a 38-year-old female, because they had children about the same age as the defendant. The defendant was 18 years old at the time the crimes against Steinbrecher and Atiles were committed and 20 years old at the time of his trial. According to answers given on their juror cards and during *voir dire*, Taylor and Norrington had children in their late teens and early twenties.

Illinois courts have recognized that the State may legitimately exercise a peremptory challenge to exclude a prospective juror who has children of an age close to the

defendant's. (See *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 840; *People v. Baisten* (1990), 203 Ill. App. 3d 64, 79; *People v. Batchelor* (1990), 202 Ill. App. 3d 316.) The defendant argues, however, that the State's explanation that it excused Taylor and Norrington because they had children about the same age as the defendant was pretextual because white venire members who were accepted as jurors also had children about the same age as the defendant. Specifically, the defendant argues, jurors Theresa Mansanarez, Donald Klinas and Patricia Abbott had children who were about the same age as the defendant. Because these jurors also had children about the same age as himself, the defendant argues, it is obvious that this explanation for excluding Taylor and Norrington was pretextual.

It is true that where the State fails to exclude white venire members having the same characteristic as a black venire member who was excused on the basis of that characteristic, an inference of purposeful racial discrimination is raised. (*People v. Mack* (1989), 128 Ill. 2d 231, 239; *People v. McDonald* (1988), 125 Ill. 2d 182, 199.) However, in many instances there will be no single criterion that serves as a basis for the decision whether to excuse a particular venireperson. A characteristic deemed to be unfavorable in one prospective juror, and hence grounds for a peremptory challenge, may, in a second prospective juror, be outweighed by other, favorable characteristics. (*Mack*, 128 Ill. 2d at 239.) As this court stated in *People v. Young* (1989), 128 Ill. 2d 1, 23-24: "Though a part of the prosecutor's explanations may have been applicable to white jurors who were not challenged, the white jurors may have, in some other respect, exhibited a trait which the prosecutor reasonably could have believed would make him or her desirable as a juror."

In this case, Mansanarez, Klinas and Abbott, who, like Taylor and Norrington, had children in the same age bracket as the defendant, had additional favorable characteristics. Mansanarez stated during *voir dire* that she had a daughter who dated a police officer. As stated, the State explained that it was looking for jurors who knew police officers. Klinas, who testified during *voir dire* that he had neighbors who were police officers and that he sometimes discussed their work with them, also exhibited this characteristic. Neither Taylor or Norrington, on the other hand, indicated that they were acquainted with any police officers. Further, Klinas had been self-employed for the past 16 years, a characteristic deemed favorable by the State. He had also lived for 20 years at his current address, a characteristic which the State argues shows commitment and stability. In contrast, Taylor had lived at his current address for only four years and was not self-employed, having worked for the past 10 years as a custodian for the Federal General Services Administration. Norrington had not recently been employed and had lived at her current address for only a few years.

As for juror Abbott, she was also self-employed, had lived at her current address for 22 years and had previously served on a jury in a personal injury case. As noted, the State considered prior jury service to be a favorable characteristic. Both Taylor and Norrington stated that they had not previously served on a jury. Because the jurors who had children about the same age as the defendant exhibited favorable characteristics not possessed by Taylor or Norrington, the State's exercise of peremptory challenges against Taylor and Norrington on that basis cannot be considered pretextual.

In a final attack on the State's exercise of a peremptory challenge to excuse Taylor and Norrington on the grounds that they had children the same age as the

defendant, the defendant cites *People v. Walls* (1991), 220 Ill. App. 3d 564. In that case, the appellate court held that the State's explanation that it excused a black juror because she had children the same age as the defendant, who was black, was pretextual where whites who served as jurors also had children about that age. The defendant points out that, in *Walls*, the defendant and the victims, as in the case at bar, were about the same age. The defendant contends that *Walls* stands for the proposition that where a defendant and a victim are the same age, excusing a venire member because he has children the same age as the defendant is always a pretextual explanation. The explanation must be considered pretextual, the defendant claims, because any potential sympathy based on age would as likely favor the State as the defendant.

*Walls*, however, does not support the defendant's position. The *Walls* court failed to examine the accepted venire members whose children were of the same age as the defendant to determine whether they had other desirable traits which caused the prosecutor to accept them. Moreover, to the extent that *Walls* stands for the proposition that where a defendant and a victim are about the same age, it is always pretextual to excuse a venire member on the grounds that he or she had children about the same age as the defendant, we find the court's reasoning unpersuasive. As the State points out in its brief, it must be remembered that the victims in this case were not on trial, and the jury was not deciding their fate. A prosecutor, particularly in a case such as this where the death penalty was a possibility, would be concerned with whether a juror would be unduly sympathetic toward the defendant, whose fate was being decided. Potential juror sympathy for the victim does not invalidate a prosecutor's concern that a venireperson would be unduly sympathetic toward the defendant.

We conclude that the State's decision to excuse Taylor and Norrington reflected the State's valid concerns that those venire members might be biased because they had children about the same age as the defendant. The trial court's determination that the State's explanation was race neutral and sufficient to rebut the defendant's *prima facie* case was not clearly erroneous.

## Maxine Schoop

The State explained that it exercised a peremptory challenge against Maxine Schoop, a 41-year-old female, because she stated during *voir dire* that she had twin 16-year-old sons but that she did not know where they were. According to the State, the fact that Schoop did not know where her 16-year-old sons were indicated that she was not the mature, stable and responsible type of individual it wanted as a juror.

We conclude that the State's explanation that it excused Schoop from the jury because she did not know the whereabouts of her sons was a legitimate, race-neutral reason for the State to exercise a peremptory challenge. Illinois courts have recognized that a challenge based upon the particulars of a venire member's family history is valid. See *People v. Johnson* (1991), 218 Ill. App. 3d 967 (existence of illegitimate 12-year-old child a neutral reason for dismissing a venire member); *People v. Coulter* (1992), 230 Ill. App. 3d 209 (fact that venireperson fathered children by two different women was a valid basis for exercising a peremptory challenge).

The defendant argues that it is unfair to question Schoop's maturity, responsibility and stability on the grounds that she did not know where her sons were. The defendant contends that to question Schoop's maturity, responsibility and stability on this basis is the result of relying on racial stereotypes. The defendant's argument, however, is not persuasive. It may be possible that a

mother would not know the whereabouts of her children for reasons that would not reflect adversely on her maturity, responsibility and stability. However, the State's belief that Schoop's lack of knowledge reflected a lack of maturity, responsibility and stability was not unreasonable. Further, nothing in the State's explanation that it was excusing Schoop because she did not know where her children were indicated that the State would have had a different reaction had Schoop been white. None of the venire members who were selected as jurors gave a similar answer regarding their children, indicating that the State's exercise of a peremptory challenge to excuse Schoop on this basis was not a pretext for racial discrimination.

We conclude that the trial court's determination that the State's explanation was race neutral and sufficient to rebut the defendant's *prima facie* case of racial discrimination was not clearly erroneous.

## Eric Roberts and Joe Allen

The State explained that it excused Roberts, a 27-year-old male, and Allen, a 26-year-old male, because it considered them to be "within the same age bracket" as the defendant. The fact that a prospective juror is similar in age to the defendant is a legitimate reason for exercising a peremptory challenge. (*People v. Baisten* (1990), 203 Ill. App. 3d 64, 79.) In *Baisten*, the appellate court upheld the State's peremptory challenge against a venireperson who was 31 years old where the defendant was 25 years old, a six-year difference. In this case, Roberts was 27 years old and the defendant was 20 years old at the time of trial, a seven-year difference. Allen was 26 years old at the time of trial, a six-year difference in age from the defendant. Despite the defendant's arguments to the contrary, we conclude that Roberts and Allen were sufficiently close in age to the

defendant to render the State's challenge of them on that basis valid.

The defendant next contends that excusing Roberts and Allen on the basis of their age was a pretext for racial discrimination because white venire members who were not excluded were also in the same age bracket as the defendant. The defendant's argument, however, ignores the fact that accepted venire members Patrick Crosby, Kathleen Richmond and Joslyn Perkins, who were in the same age bracket as the defendant, had favorable characteristics that were not shared by Roberts and Allen. Crosby, who was 27 years old, had prior jury service and had lived at the same address for 20 years. Roberts, on the other hand, had no prior jury experience and had lived at his current address for just three years. Allen also had no prior jury experience and had lived at his current address for two years. Richmond, who was 27 years old, had an uncle who was a police officer, while neither Roberts nor Allen indicated that they were acquainted with any police officers. Finally, Perkins, who was 23 years old, was self-employed as a court reporter. The fact that Perkins was a court reporter, in addition to being self-employed, was a characteristic which the State found to be favorable. At the hearing on remand from *Andrews II*, the State commented, "Miss Perkins was a court reporter, and I find that court reporters have experience from courtroom proceedings ***. I would find them to be a very good jury member." Roberts, on the other hand, was employed as a sales manager by a shoe company and Allen was employed by a bakery as a baker. We further note that Richmond and Perkins were female and therefore less likely to relate to the defendant than Roberts or Allen even though Richmond and Perkins were also about the same age as the defendant.

We conclude that the State's explanation that it excused Roberts and Allen based upon their age was not pretextual. The trial court's determination that the State's explanation was race neutral and sufficient to rebut the defendant's *prima facie* case of racial discrimination was not clearly erroneous.

### Robert Crump

The State exercised a peremptory challenge against Robert Crump, a 54-year-old male, on the grounds that he had been unemployed for seven years and had no apparent disability or other reason for being unemployed. The State noted that Crump had stated during *voir dire* that he had "resigned" from his last job.

The fact that a venireperson is unemployed has been deemed a race-neutral reason for exercising a peremptory challenge. (*People v. Coulter* (1992), 230 Ill. App. 3d 209, 227 (prospective juror unemployed for 10 years); *People v. Johnson* (1991), 218 Ill. App. 3d 967, 986 (prospective juror unemployed for one year).) Only two members of the jury in this case, Theresa Mansanarez and Hollins Riley, were unemployed. With respect to both Mansanarez and Riley, the reasons for their unemployment were apparent. Mansanarez had three minor children living at home, the youngest of whom was 10 years old. Riley, who was 70 years old, was retired from a management position with a manufacturing company. Moreover, both Mansanarez and Riley had characteristics favored by the State which were not shared by Crump. Mansanarez had a daughter who was dating a police officer, while Riley had lived for 32 years at the same address, a characteristic which the State asserts exhibits stability and commitment. Crump, on the other hand, had lived at his current address, which he volunteered was a rooming house, for 2½ years. Further, Crump's

answers on his jury card and during *voir dire* indicated that he was not acquainted with any police officers.

Accordingly, we conclude that the State's exercise of a peremptory challenge to excuse Crump on the basis of his lengthy unemployment was not pretextual. The trial court's determination that the State's explanation was race neutral and sufficient to rebut the defendant's *prima facie* case of discrimination was not clearly erroneous.

### Jimmy Green

The State explained that it exercised a peremptory challenge against Jimmy Green, a 35-year-old male, because he lived in the same neighborhood in which the crimes against Steinbrecher and Atiles were committed and in which the defendant lived. The State explained that it excused Green based upon his residence because "certainly during the course of the trial he may find out that he knows somebody who knew Mr. Andrews. Just being from the area itself, you may be uncomfortable having to pass judgment on someone in the community where he is going to have to live, where his children are going to have to also live and congregate with other members of the community, and I don't think it puts him in a good situation \*\*\*. \*\*\* [T]his may be something that could affect Mr. Green \*\*\* and for that reason we excused Mr. Green."

This court has held that striking a potential juror because he or she resides near the scene of the crime or near the residence of the defendant is a legitimate, nondiscriminatory reason for exercising a peremptory challenge. (*People v. Hooper* (1989), 133 Ill. 2d 469, 509-10.) The defendant contends that it was improper to excuse Green based upon his residence because Green never indicated that he knew the defendant or anyone on the list of witnesses, nor was he asked about his knowledge of

the location of the offense. The defendant's arguments, however, are unpersuasive. In *Hooper*, the court deemed proper the exercise of a peremptory challenge on this basis even where the excused venireperson did not know the defendant or have any specific knowledge of the crime scene. The State here was concerned about the effect on Green of living in the same neighborhood as the crime scene and the defendant's residence, regardless of whether Green knew the defendant or any witnesses or had any particular knowledge of the crime scene. We note that, in this case, none of the accepted venire members came from the neighborhood in which the crimes occurred and in which the defendant lived.

We conclude that the State's decision to exclude Green on the grounds that he lived in the neighborhood in which the crime scene was located and in which the defendant and his mother lived was not a pretext for racial discrimination. The trial court's determination that the State's explanation was race neutral and sufficient to rebut the defendant's *prima facie* case was not clearly erroneous.

### Jackie Davis

The State explained that it exercised a peremptory challenge against Jackie Davis, a 31-year-old female, because Davis gave hesitant, cavalier and inappropriate answers during *voir dire*, which indicated a lack of maturity. Challenging a juror based upon a hesitant, nonserious or inappropriate demeanor has repeatedly been accepted by this court as proper. (*People v. Hooper* (1989), 133 Ill. 2d 469, 509; *People v. Harris* (1989), 129 Ill. 2d 123, 175-76.) The record here fully supports a demeanor-based challenge to Davis. When the trial court asked Davis with whom she lived (a question the court also asked other venire members), Davis replied, "Myself, me, one." The trial court then asked Davis about

her marital status, to which Davis replied, "Well, I don't call that married. I was only married for three months." Later during the trial court's questioning of Davis, the court asked whether she could give both sides a fair trial. Davis replied that she could, but the trial court apparently perceived some hesitation. The court stated, "There seems to be a real hesitation, is there something behind that?" Davis replied, "I know it's for real, but when, you know, it seems more real, you really feel involved in a way, whatever." Finally, the trial court inquired of Davis whether she had any hobbies. Davis answered, "I guess a little of everything, hiking, dancing, mostly that, I guess. I like to sing, but I can't." The trial court commented, "Neither can I," to which Davis responded, "Tell the truth, right."

Davis' responses to the trial court's questions raise doubts about whether she would have been able to approach the position of being a juror with the necessary seriousness and maturity. The defendant disagrees that Davis' demeanor was inappropriate. However, we conclude that the trial court's determination that the State's exercise of a peremptory challenge against Davis on the basis of her demeanor was race neutral and sufficient to rebut the defendant's *prima facie* case of racial discrimination was not clearly erroneous.

## CONCLUSION

We conclude that the trial court's determination that the State's explanations were race neutral and sufficient to rebut the defendant's *prima facie* case of racial discrimination was not clearly erroneous. Our conclusion that no purposeful discrimination occurred is supported by the fact that three of the jury members in this case were black. The State exercised only 8 of the 14 peremptory challenges allotted to it. Had the State intended to purposefully discriminate against black venire members,

it could have used peremptory challenges to also exclude the three black venire members who eventually sat on the defendant's jury. Our conclusion that no purposeful discrimination occurred is also supported by the fact that the black venire members who were excused were not excused consecutively. Rather, the State's strikes occurred in between the State's acceptance of tendered black venire members. This court has held that a nonconsecutive pattern of strikes supports the proposition that the State was not bent on systematically excluding black venire members. *People v. Mitchell* (1992), 152 Ill. 2d 274, 304.

Accordingly, we affirm the judgment of the trial court finding that the State did not purposefully discriminate against black venire members in the use of its peremptory challenges.

*Affirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.