THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY PECOR, Defendant-Appellant.

First District (3rd Division)    No. 1—88—1235

Opinion filed December 23, 1996.

Randolph N. Stone and Stephen L. Richards, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michele I. Lavin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

The defendant, Gregory Pecor, a white male, was convicted by a jury of murder, armed robbery and residential burglary and was sentenced to natural life imprisonment without parole for murder, 30 years' imprisonment for armed robbery and 15 years' imprisonment for residential burglary. He appealed his conviction and sentence, raising several contentions of error. One error alleged to have occurred was the State's improper use of its peremptory challenges to exclude black venirepersons from the petit jury. Based upon that contention, this court reversed and remanded the case to the trial court for a *Batson* hearing (see *Batson v. Kentucky*, 476 U.S.

792, 90 L. Ed. 2d 69, 106 S. Ct. 171 (1986)) and reserved ruling as to all other claims of error. *People v. Pecor*, 213 Ill. App. 3d 472, 572 N.E.2d 1064 (1991), *aff'd*, 153 Ill. 2d 109, 606 N.E.2d 1127 (1992). On remand, at the conclusion of the *Batson* hearing, the trial court found that the State provided race-neutral explanations for its exclusion of six black venirepersons and that no *Batson* violation had occurred. The defendant now appeals from that finding as to five of the six exclusions.[1]

## I. *Batson* Facts and Issue

■ In *Batson v. Kentucky*, the United States Supreme Court held that prosecutors who excluded potential jurors on the basis of their race violated the fourteenth amendment's guarantee of equal protection. In a subsequent case, that court held that the defendant need not be of the same race as the excluded jurors in order to have standing to raise that constitutional violation. *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991). In order to prevail on a *Batson* claim, the defendant must first establish a *prima facie* case of purposeful discrimination by showing facts or circumstances that raise an inference that the prosecutor used his peremptory challenges to remove members of a cognizable racial group from the venire. The burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the venire member in question. Then, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24. See also *Hernandez v. New York*, 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859 (1991) (opinion of Kennedy, J., joined by Rehnquist, C.J., and White and Stouder, JJ.); *People v. McDonald*, 125 Ill. 2d 182, 530 N.E.2d 1351 (1988); *People v. Randall*, 283 Ill. App. 3d 1019 (1996).

At the second step of the *Batson* process, after the burden has shifted to the State to establish race-neutral reasons for the exclusion, the prosecutor must give clear and reasonably specific, legitimate, race-neutral reasons. *Randall*, 283 Ill. App. 3d at 1025. Those reasons, which are subjective (*People v. Jones*, 201 Ill. App. 3d 440, 559 N.E.2d 112 (1990)), need not rise to the level that justifies challenges for cause (*People v. Mack*, 128 Ill. 2d 231, 538 N.E.2d 1107 (1989)) but must demonstrate neutral explanations that relate to the particular case being tried. *People v. Fryer*, 247 Ill. App. 3d 1051, 618 N.E.2d 377 (1993). As stated in *Purkett v. Elem*, 514 U.S. 102, 765,

---

[1]The defendant apparently has abandoned any error with respect to the exclusion of one venireperson, Alice Jackson, since the defendant makes no argument with respect to that exclusion in his brief.

131 L. Ed. 2d 834, 840, 115 S. Ct. 1769, 1771 (1995) (*per curiam*), "a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." Accord *People v. Figgs*, 274 Ill. App. 3d 735, 740, 654 N.E.2d 555, 560 (1995). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866.

Once the State has come forward with its reasons for striking the venirepersons, the trial court must assess the facial validity of the prosecutor's explanations (*Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866) and determine whether the reasons given are sufficient or whether they are pretextual. *People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357 (1989); *People v. Nunn*, 273 Ill. App. 3d 519, 652 N.E.2d 1146 (1995). As the trial court's finding in that regard is factual and turns largely on questions of credibility, its findings are afforded great deference and will not be overturned on review unless they are found to be clearly erroneous or against the manifest weight of the evidence. *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21; *Hernandez*, 500 U.S. at 364-69, 114 L. Ed. 2d at 408-12, 111 S. Ct. at 1868-71; *People v. Andrews*, 155 Ill. 2d 286, 293-94, 614 N.E.2d 1184, 1189 (1993); *Harris*, 129 Ill. 2d at 175, 544 N.E.2d at 380.

The record of the *Batson* hearing held on remand shows that the trial court was not convinced that the defendant had established a *prima facie* case of purposeful discrimination. In that regard the court stated:

"[I]n summation, this is a case in which I would feel very confident and very comfortable in finding that no prima facie case has been established by the defendant. However, in the interest of judicial economy, in the event that a reviewing court might disagree with that decision, I am going to find that a prima facie case has been established and I'm going to require the State to give its explanation for the exercise of its peremptory challenges as to the blacks in this case."[2]

As to each of the five venirepersons who were the subject of the

[2]The State makes some argument that the defendant did not meet his initial burden of establishing a *prima facie* case of purposeful discrimination. However, in view of the fact that the trial court elicited race-neutral explanations from the prosecutor and, as will be discussed below, ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing of purposeful discrimination is moot. *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866 (1991); *People v. Mitchell*, 152 Ill. 2d 274,

*Batson* challenge and who are the subject of the instant appeal, the following information was acquired during the *voir dire* and the following reasons were given for their exclusions.[3]

(1) Chuck Edmonds

This venireperson was a 53-year-old ticket agent with the Chicago Transit Authority. He held that position for eight years; was single; had lived in the Chicago area for over 30 years; and had a 16-year-old son who sometimes resided with him. He was a veteran, having served in the army from 1951 to 1954, and belonged to the Chicago Urban League, Operation PUSH, and the American Legion. When asked by the trial judge what he did before becoming a ticket agent, Edmonds responded, "Student." When asked whether he had any "feelings or viewpoints concerning the defense of intoxicated or drugged condition in a criminal case," he replied that he did; and at the request of defense counsel, further explained:

"[I]t's just one of the most horrendous things society has allowed to perpetrate [sic] the last 10 or 15 years is the whole thing of crime and drugs, and most of the ridiculous crimes seems to be drug or alcohol related, and me as a father with a 16-year-old child, and I live in the inner city, I see this constantly."

Edmonds further stated that he did not think his feelings would have any effect on his ability to be impartial.

At the *Batson* hearing, the prosecutor gave the following explanation for his challenge of Edmonds:

"Mr. Edmonds indicated that he was a student until he was 45 years of age, that he was single, he had been—he was 53 years old, had been employed at the CTA for eight years and that he had been a member of an [sic] Operation PUSH.

It was the 8-year employment at the age of 53 years of age and the statement that he had been a student until 45 years of age, coupled with membership of PUSH. The totality of those circumstances that the State exercised its fourth peremptory challenge."

The prosecutor further stated that instability in the community was demonstrated by the fact that Edmonds had been a "professional student at the age of 45 years old."

(2) Carlos Lavington

This venireperson was a 44-year-old supervisor for the Chicago

---

604 N.E.2d 877 (1992).

[3]At the time of the *Batson* hearing, the individual who represented the State at the *voir dire* was employed as a circuit court judge. He was called to testify at the *Batson* hearing.

Park District. Lavington worked for that entity for 18 years; described his job as "dealing with kids all day, gym"; and was a widower with two small children. He stated that sometime in the late 1970s he was called to testify as a defense witness in a robbery case, a fact that he stated would not affect his ability to be fair and impartial.

At the *Batson* hearing, the prosecutor explained that he exercised a peremptory challenge as to Lavington because "he had testified as a defense witness in a robbery trial and that he was employed working with kids."

### (3) Alberta Collins

This venireperson was 50 years old; was single; was unemployed since 1972; lived in Chicago for 28 years; and was active in the Church of God and Christ. When asked what she did in her spare time, she stated that she watched television or read her Bible.

At the *Batson* hearing, the prosecutor stated that he exercised a peremptory challenge as to Collins because she "was single and unemployed since 1972 and that she read the Bible." The prosecutor stated that the fact that Collins read the Bible gives "an inference that she would be against the death penalty."

### (4) Joyce Joshawa

This venireperson was 49 years old; was divorced; had been unemployed for four years; and had been terminated from her last employment as a factory worker. She lived at the same address since 1973.

At the *Batson* hearing, the prosecutor stated that he exercised a peremptory challenge as to Joshawa because she "had been unemployed, terminated from employment and had been off work for four years."

### (5) Mark Anthony Gossitt

This venireperson was 31 years old; was single; lived in Chicago; and had worked as a security guard for two years. Before working as a security guard, Gossitt worked as a dancer and had done so since he was nine years old. Gossitt stated that as a dancer he travelled the United States.

At the *Batson* hearing, the prosecutor stated that he exercised a peremptory challenge as to Gossitt because Gossitt had been a security guard for two years and prior to that time had been a dancer travelling around the United States. The prosecutor further stated that "[i]t was the area in the field of entertainment in relation to the

nature of the charge and the anticipated defense of drug intoxication that caused the prosecution concern regarding that individual."

At the conclusion of the *Batson* hearing, the prosecutor tendered his notes. The trial judge examined those notes, which he found to be "incredibly thorough" and totally corroborative of the *Batson* testimony. After hearing argument by both sides, the trial court concluded that the prosecutor had given valid and legitimate race-neutral reasons that were nonpretextual. The court specifically stated that, in reaching that conclusion, it relied upon its knowledge of the prosecutor's "honor and good integrity."

As stated above, in order to meet its burden at the second stage of a *Batson* challenge, the State must provide race-neutral reasons for excluding the venirepersons in question. The *Batson* requirement that the proponent of a strike give a clear and specific explanation of the legitimate reason for the strike (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24) is not a requirement that the reason make sense. *Purkett*, 514 U.S. 765, 131 L. Ed. 2d 834, 115 S. Ct. 1769. The reason need not be persuasive or plausible; it must, however, be race-neutral. *Purkett*, 514 U.S. 765, 131 L. Ed. 2d 834, 115 S. Ct. 1769; *Nunn*, 273 Ill. App. 3d 519, 652 N.E.2d 1146. Absent an inherent discriminatory intent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Purkett*, 514 U.S. at 770, 131 L. Ed. 2d at 840, 115 S. Ct. at 1771; *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866. See also *Randall*, 283 Ill. App. 3d at 1025-26 (for detailed list of acceptable race-neutral reasons and case citations (*e.g.*, too old, too young, divorced, unemployed, single, lacked family contact, lacked community ties)).

■ In the instant case, as discussed above, the prosecutor gave several explanations for exercising the State's peremptory challenges as to each of the venirepersons in question. As long as one of the explanations establishes a legitimate race-neutral basis, the existence of an erroneous basis will not establish a *Batson* violation. *People v. Andrews*, 155 Ill. 2d 286, 294, 614 N.E.2d 1184, 1189 (1993) ("[r]esolution of the [*Batson*] issue ***, however, requires only that we accept one of the explanations advanced by the State with respect to each venire member"); *People v. Figgs*, 274 Ill. App. 3d 735, 742, 654 N.E.2d 555, 561 (1995). See *People v. Mitchell*, 152 Ill. 2d 274, 302-03, 604 N.E.2d 877, 892 (1992) (although one basis erroneous, other legitimate basis existed to support conclusion that there was no *Batson* violation). See also *People v. Holmes*, 272 Ill. App. 3d 1047, 651 N.E.2d 608 (1995) (although race-specific trait existed, case remanded for *Batson* hearing for State to come forward with race-neutral reason for exclusion). Here, the following acceptable race-

neutral explanations were given for each of the excluded venireper- sons. Chuck Edmonds was excluded because at the age of 53 he had been employed for eight years, having been a student prior to that time. Alberta Collins was excused because she was single and unemployed since 1972; and Joyce Joshawa was excused because she had been unemployed for four years and had been terminated from her most recent job. Employment status, unemployment and status as a student are race-neutral traits that justify a peremptory chal- lenge. *E.g., Andrews*, 155 Ill. 2d 286, 614 N.E.2d 1184 (employment); *People v. Mack*, 128 Ill. 2d 231, 538 N.E.2d 1107 (1989) (employment); *People v. Lovelady*, 221 Ill. App. 3d 829, 582 N.E.2d 1217 (1991) (employment; status as student); *People v. Batchelor*, 202 Ill. App. 3d 316, 559 N.E.2d 948 (1990) (employment). Carlos Lavington was excused because he had testified as a defense witness in a robbery trial. Lavington's participation as a defense witness is an acceptable race-neutral reason. See *Mack*, 128 Ill. 2d 231, 538 N.E.2d 1107; *Lovelady*, 221 Ill. App. 3d 829, 582 N.E.2d 1217; *Batchelor*, 202 Ill. App. 3d 316, 559 N.E.2d 948 (connections with those who do defense work held to justify peremptory challenge). See also *Harris*, 129 Ill. 2d 123, 544 N.E.2d 357 (fact that venireperson's son testified in court as a victim of an armed robbery held to justify peremptory chal- lenge). Mark Anthony Gossitt was excused because he had been a se- curity guard for two years and, prior to that time, had worked in the entertainment field as a dancer. With respect to the latter experi- ence, the prosecutor expressed concern that Gossitt would have had some exposure to drug intoxication, defendant's anticipated defense. This reason is trial related and race-neutral.[4]

■ The defendant contends that the prosecutor's explanations were speculative and pretextual. With respect to Edmonds, the defen-

---

[4]In *People v. Hope*, 137 Ill. 2d 430, 560 N.E.2d 849 (1990), the court sug- gested that drug counselling was material where the defense of drug intoxica- tion was anticipated. In *Hope,* however, the venire member was not a drug counsellor; his brother was; and the prosecutor mistakenly stated that the stricken venireperson was a drug counsellor. Nevertheless, the strike was found not to be in violation of *Batson. Hope* was vacated and remanded by the United States Supreme Court (*Hope v. Illinois*, 501 U.S. 1202, 115 L. Ed. 2d 966, 111 S. Ct. 2792 (1991)); and on remand, the Illinois Supreme Court found that the State's reasons for the exclusion of the black venirepersons, namely, age, job status and being a crime victim, were pretextual where white venirepersons, who possessed the same characteristics without any offsetting positive traits not present in the excluded black venirepersons, were chosen to serve on the jury. *People v. Hope*, 147 Ill. 2d 315, 589 N.E.2d 503 (1992).

dant argues that the State failed to establish that Edmonds' membership in Operation PUSH would affect his judgment; failed to question Edmonds about his student status so as to establish that he had been a student until the age of 45 or that he was unstable. As to Lavington, the defendant argues that the prosecutor did not make further inquiry into the nature of Lavington's participation as a defense witness to establish bias and failed to establish any connection between his employment "working with kids" and the trial. Next, as to Collins, the defendant argues that there is no support for the prosecutor's inference that a person who reads the Bible would be opposed to the death penalty. As to both Collins and Joshawa, the defendant argues that the prosecutor accepted other venirepersons who were single and one who was unemployed. Finally, as to Gossitt, the defendant argues that the prosecutor's belief that Gossitt would be tolerant of drug use was unsubstantiated. As a result of these deficiencies, the defendant argues that the court should have found that the reasons given by the State were pretextual and that racial discrimination had been established.

Several of defendant's contentions concern the prosecutor's failure to make further inquiry of venirepersons Edmonds, Lavington, Collins and Gossitt to better substantiate the reasons for their exclusion. However, the prosecutor is not obligated to examine a juror to verify his assumptions and a " 'prosecutor's belief does not need to be proved demonstrably true either in general or in regard to the particular [juror] excluded.' " *Figgs*, 274 Ill. App. 3d at 743, 654 N.E.2d at 562, quoting *People v. Thomas*, 201 Ill. App. 3d 255, 260, 559 N.E.2d 262 (1990). While the lack of further inquiry is a factor to be considered by the trial court in evaluating the legitimacy of the State's explanation, the ultimate issue is whether the prosecutor's opinion about the juror actually motivated the peremptory challenge. *Figgs*, 274 Ill. App. 3d at 743, 654 N.E.2d at 562. Here, as will be discussed below, the trial court found that the prosecutor was credible and that the race-neutral reasons he gave motivated the peremptory challenges in question.

We also reject the defendant's arguments that the exclusion of Collins and Joshawa on the bases of their being single and unemployed was pretextual since nine other venirepersons selected as jurors were single and one was unemployed. The defendant has not set forth the racial composition of the venirepersons who were selected as jurors, but for the purpose of this argument, we will presume they were not black. If a prosecutor rejects a minority venireperson for possessing certain characteristics but does not reject a white venireperson who shares those same characteristics, there is

no presumption that the prosecutor's explanations were pretextual. *People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357 (1989). If the white venireperson possesses an additional trait that the prosecutor seeks or if the minority venireperson possesses a trait that makes him undesirable, the explanation is not pretextual and no error obtains. *E.g.*, *Andrews*, 155 Ill. 2d 286, 614 N.E.2d 1184; *Harris*, 129 Ill. 2d 123, 544 N.E.2d 357; *Randall*, 283 Ill. App. 3d at 1030; *People v. Lovelady*, 221 Ill. App. 3d 829, 582 N.E.2d 1217 (1991). Here, as pointed out by the State, the other single venirepersons chosen were all employed. Moreover, Collins and Joshawa were stricken not because they were single but because they were unemployed, which, as discussed above, is a race-neutral trait supportive of the exercise of a peremptory challenge. Similarly, the traits of the venireperson who was chosen to be a juror but who was unemployed are substantially different from Collins and Joshawa. That person, who was 61 years old, had worked for 30 years. She was married, had four adult children, and had lived in the same suburban area for 34 years. These characteristics provide a meaningful distinction between the juror selected and Collins and Joshawa. See *Randall*, 283 Ill. App. 3d at 1030.

■ Only Edmonds' exclusion presents any question as to the existence of purposeful discrimination. While, as discussed above, his employment record and student status are race-neutral factors that could support the prosecutor's belief of instability,[5] the rejection of Edmonds on the basis of his membership in Operation PUSH presents the appearance that Edmonds' strike was racially motivated. In *People v. Holmes*, 272 Ill. App. 3d 1047, 651 N.E.2d 608 (1995), an African-American venireperson who acknowledged membership in the NAACP was struck from the jury. That venireperson possessed substantially the same characteristics as other accepted members of the venire other than race and membership in the NAACP. Several of the selected venirepersons had memberships in various civic

---

[5]The State in its brief also suggests other race-neutral factors that would support the exercise of a peremptory challenge as to Edmonds. The State argues that Edmonds was unemployed and responsible for supporting a child while he was a student. The defendant argues that there was nothing in the record to support that conclusion. However, as noted in the text of this opinion, the prosecutor did not state at the *Batson* hearing that he struck Edmonds because of this fact. The court must focus its inquiry on the reasons actually articulated by the State at the *Batson* hearing (*People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357 (1989)); and we cannot consider other facts that could have but did not serve as the basis for the strike. See *People v. Baisten*, 203 Ill. App. 3d 64, 560 N.E.2d 1060 (1990).

organizations; and one selected venireperson was a member of the National Council of Jewish Women which, like the NAACP, had a strong ethnic identification and composition. Finding that the NAACP was an organization that could be "identified with race" (272 Ill. App. 3d at 1057, 651 N.E.2d at 615) and that the inference was raised that the African-American juror was excluded solely on the basis of race, the court held that the defendant had established a *prima facie* case of racial discrimination and remanded the matter for a *Batson* hearing, placing the burden on the State to come forward with a race-neutral reason for the exclusion.

While there is nothing in the record specifically as to Operation PUSH, we will, for purposes of this appeal, presume that Operation PUSH is an organization whose racial composition is predominantly if not exclusively African-American, and, as such, we would treat any exclusion on that basis with suspicion. See *Holmes*, 272 Ill. App. 3d 1047, 651 N.E.2d 608; *Somerville v. State*, 792 S.W.2d 265 (Tex. Ct. App. 1990). However, unlike in *Holmes*, the defendant here has not shown that the other venirepersons who were selected as jurors belonged to other racially or ethnically focused organizations. More significantly, in the instant case, as discussed above, other independent, nonsuspect, and race-neutral reasons apart from membership in Operation PUSH were given as the basis for the exclusion. The prosecutor stated that he excluded Edmonds because of his eight-year employment at the age of 53 and his statement that he had been a student prior to that employment until the age of 45. At the *Batson* hearing, the prosecutor argued that these traits suggested instability. When viewed as a whole, these independent race-neutral reasons diluted the suspicion of a race-based exclusion that may well have been created if Edmonds' membership in Operation PUSH were the only reason given. See *Holmes*, 272 Ill. App. 3d 1047, 651 N.E.2d 608. See also *Andrews*, 155 Ill. 2d 286, 614 N.E.2d 1184.

■ At the third stage of the *Batson* process, the trial court must assess the credibility of the prosecutor and the "genuineness" of his or her explanation in order to determine whether the explanation provided was pretextual. *People v. Nunn*, 273 Ill. App. 3d 519, 525, 652 N.E.2d 1146, 1150 (1995), citing *Purkett*, 514 U.S. at 770, 131 L. Ed. 2d at 840, 115 S. Ct. at 1771-72. In this regard, we note that trial judges are familiar with local conditions and prosecutors and can consider those factors in determining credibility and evaluating whether the State engaged in purposeful discrimination. *E.g., People v. Mahaffey*, 128 Ill. 2d 388, 539 N.E.2d 1172 (1989); *People v. Evans*, 125 Ill. 2d 50, 530 N.E.2d 1360 (1988); *Figgs*, 274 Ill. App. 3d 735, 654 N.E.2d 555; *People v. Boston*, 224 Ill. App. 3d 218, 586 N.E.2d 326

(1991). Here, at the *Batson* hearing, the prosecutor who represented the State at the *voir dire* testified concerning the reasons for the exercise of the peremptory challenges in question. During the course of that hearing, the trial court made several references to the character of that individual, noting that he had known him for 15 years and had had ample courtroom experience with him. The judge noted that the former prosecutor was "eminently fair and reasonable"; was "a deeply religious man"; that he had "set a fine example in the area of *Batson*"; and that he was honorable and of "good integrity." The judge then summarily stated that the reasons given by the State, including instability, unemployment and bias, were legitimate and race neutral. We cannot say that that factual determination was against the manifest weight of the evidence, and we affirm the court's finding that no *Batson* violation occurred.[6]

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY and HOURIHANE, JJ., concur.

---

[6]In order to comply with Supreme Court Rule 23 (166 Ill. 2d R. 23), our discussion of the trial and sentencing evidence and the arguments raised by the defendant with respect to the trial and sentencing hearing have been omitted from the published portion of this opinion. For a full discussion of that evidence and those issues, see the entire unabridged "hybrid" opinion of *People v. Pecor*, No. 1—88—1235, filed with the clerk of this court.