Gregory PECOR, Petitioner–Appellant,

v.

Jonathan R. WALLS, Respondent–Appellee.

No. 01–3916.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 14, 2002.

Decided Jan. 8, 2003.

Before RIPPLE, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Gregory Pecor was convicted of murder, armed robbery, and residential burglary, and after exhausting his state court remedies, he filed a petition under 28 U.S.C. § 2254, arguing that the state prosecutor improperly exercised race-based peremptory challenges against African–American venirepersons. The district court denied Mr. Pecor's petition, and on appeal Mr. Pecor focuses exclusively on the strike against potential juror Chuck Edmonds. We affirm.

During jury selection for Mr. Pecor's trial, the prosecution exercised four of its first five peremptory challenges against African–American venirepersons, including Chuck Edmonds. Mr. Edmonds was fifty-three years old at the time and, for the previous eight years, had worked as a ticket agent for the Chicago Transit Authority ("CTA"). When the judge asked him what he did before working for the CTA, Mr. Edmonds answered, "Student." The judge did not inquire further into his work history, but asked if he belonged to any social clubs, groups, or organizations. Mr. Edmonds replied that he was a member of the Chicago Urban League, Operation PUSH, and the American Legion.

After the prosecutor struck Mr. Edmonds and the other African–American venirepersons, defense counsel objected, arguing that the prosecutor's challenges were based on race and that Mr. Pecor was entitled to a hearing under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor argued against conducting a hearing because Mr. Pecor, a white male, was not the same race as the African–American venirepersons. Relying on *People v. Holland*, 121 Ill.2d 136, 117 Ill.Dec. 109, 520 N.E.2d 270 (1987), the trial judge denied the request for a hearing because Mr. Pecor did not have standing to challenge the exclusions.

While Mr. Pecor's appeal of his convictions was pending, the Supreme Court of the United States decided *Powers v. Ohio,* 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which held that in order to challenge a race-based exclusion, the defendant need not be the same race as the excluded juror. Based on *Powers,* the Illinois appellate court remanded the case to the trial court for a *Batson* hearing, *People v. Pecor,* 213 Ill.App.3d 472, 157 Ill.Dec. 600, 572 N.E.2d 1064 (1991), and the Supreme Court of Illinois affirmed, *People v. Pecor,* 153 Ill.2d 109, 180 Ill.Dec. 50, 606 N.E.2d 1127 (1992).

During the *Batson* hearing the trial judge concluded in the interest of judicial economy that Mr. Pecor had established a prima facie case of race-based peremptory challenges. Before requiring the prosecutor to explain his reasons for excluding the African–American jurors, the judge characterized the challenges as "totally innocent" and "unintentional":

> Judge Dwyer,[1] I have found that, albeit a totally innocent one on your part, but nevertheless they changed the rules on you and they changed the rules on me in this case, and I therefore have found that, although I do not believe that there is a prima facie case established in this case at all, in the interest of judicial economy in the event that a reviewing court might disagree with me, I'm going to make a finding, sir, that there was an unintentional but nevertheless prima facie basis, and at this time I'm going to ask you, sir, as the lead prosecutor in that case to give the court your explanation for the exclusion of certain jurors, if you are willing to do so, sir.

The prosecutor then explained that he excluded Mr. Edmonds based on his employment history and his membership in Operation PUSH:

> In the course of the voir dire Mr. Edmonds indicated that he was a student until he was 45 years of age, that he was single, he had been – he was 53 years old, had been employed at CTA for eight years and that he had been a member of an [sic] Operation PUSH.
>
> It was the 8–year employment at the age of 53 years of age and the statement that he had been a student until 45 years of age, coupled with membership of PUSH. The totality of those circumstances that the State exercised its fourth peremptory challenge [sic].

The judge concluded that there was no *Batson* violation because the prosecutor gave "valid and legitimate race neutral reasons" for excluding Mr. Edmonds and that those reasons were "non-pretextual."

Mr. Pecor appealed to the Illinois appellate court, which presumed for purposes of the appeal "that Operation PUSH is an organization whose racial composition is predominantly if not exclusively African–American." *People v. Pecor,* 286 Ill. App.3d 71, 81, 221 Ill.Dec. 234, 675 N.E.2d 141 (1996). Based on that presumption, the court viewed the exclusion of Mr. Edmonds "with suspicion," and concluded that "the rejection of Edmonds on the basis of his membership in Operation PUSH presents the appearance that Edmonds' strike was racially motivated." *Id.* at 80–81, 221 Ill.Dec. 234, 675 N.E.2d 141. Nevertheless, the court concluded that there was no *Batson* violation because the prosecutor's other independent race-neutral reasons for striking Mr. Edmonds "diluted the suspicion of a race-based exclusion which may well have been created if

---

1. Thomas Dwyer, the prosecutor during Mr. Pecor's trial, had become a Circuit Court judge in Cook County.

Edmonds' membership in Operation PUSH were the only reason given." *Id.* The Supreme Court of Illinois denied Mr. Pecor's petition for leave to appeal. *People v. Pecor,* 173 Ill.2d 539, 226 Ill.Dec. 137, 684 N.E.2d 1340 (1997).

Mr. Pecor then filed a petition under § 2254 in the district court, arguing that the prosecutor improperly exercised race-based peremptory challenges against African–American venirepersons. He contended that the Illinois appellate court unreasonably applied *Batson* when it concluded that the prosecutor's reasons for the exclusions were race-neutral and non-pretextual. The district court concluded that the Illinois appellate court correctly applied *Batson* and that it would not "second guess" the court's conclusions.

On appeal Mr. Pecor argues that Mr. Edmonds's exclusion from the jury violated *Batson*'s prohibition against race-based peremptory strikes. Specifically, Mr. Pecor argues that (1) the exclusion of Mr. Edmonds based on his membership in Operation PUSH was not race-neutral; (2) the prosecutor's other reasons for the exclusion were pretextual; and (3) the trial judge predetermined the outcome of the *Batson* hearing by characterizing the prosecutor's exclusions as "totally innocent" and "unintentional" before the prosecutor explained his reasons. In order to obtain habeas corpus relief, Mr. Pecor must show that the state court's adjudication of his *Batson* claim was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court's factual determination was unreasonable in light of the evidence presented, 28 U.S.C. § 2254(d)(2). *See Williams v. Davis,* 301 F.3d 625, 631 (7th Cir.2002); *McCain v. Gramley,* 96 F.3d 288, 290 (7th Cir.1996). "Under the 'unreasonable ap-

plication' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ The Illinois appellate court resolved Mr. Pecor's *Batson* claim without deciding whether an exclusion based on membership in Operation PUSH is race-based. Instead, the court concluded that the presence of other independent race-neutral reasons for striking Mr. Edmonds "diluted the suspicion of a race-based exclusion which may well have been created if Edmonds' membership in Operation PUSH were the only reason given." *Pecor,* 286 Ill.App.3d at 80–81, 221 Ill.Dec. 234, 675 N.E.2d 141. Thus, the Illinois appellate court employed a "mixed motives" analysis, i.e., the peremptory strike is invalid if motivated by race, but the government is entitled to the defense that it would have taken the same action in the absence of the impermissible motive. *See Gattis v. Snyder,* 278 F.3d 222, 234–35 (3d Cir.2002), *citing Mt. Healthy City Sch. Bd. of Educ. v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

All circuits that have addressed the mixed motives analysis have held that it is proper, or a least not unreasonable, under *Batson. Gattis,* 278 F.3d at 234–35; *Weaver v. Bowersox,* 241 F.3d 1024, 1032 (8th Cir.2001); *Wallace v. Morrison,* 87 F.3d 1271, 1274 (11th Cir.1996); *Howard v. Senkowski,* 986 F.2d 24, 30 (2d Cir. 1993); *see also Jones v. Plaster,* 57 F.3d 417, 421 (4th Cir.1995) (applying mixed motives analysis without explicitly determining its validity under *Batson* ). Those

circuits imported the mixed motives analysis from equal protection jurisprudence. *See Mt. Healthy*, 429 U.S. at 284–87; *Village of Arlington Heights*, 429 U.S. at 270 n. 21. This circuit has yet to address the issue, but Judge Cudahy advocated the mixed motives analysis in his dissent in *Holder v. Welborn*, 60 F.3d 383, 390–92 (7th Cir.1995).

The mixed motives analysis, however, is not universally accepted. At least five states have rejected it in favor of the "taint rule," i.e., a race-based reason for excluding a potential juror taints any race-neutral reason and violates *Batson*. *State v. Lucas*, 199 Ariz. 366, 18 P.3d 160, 163 (2001); *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205, 210 (1998); *Ex parte Sockwell*, 675 So.2d 38, 41 (Ala.1995); *Rector v. State*, 213 Ga.App. 450, 444 S.E.2d 862, 865 (1994); *Benavides v. Am. Chrome & Chem. Inc.*, 893 S.W.2d 624, 626–27 (Tex. App.1994). Additionally, Justice Marshall, in a dissent from the denial of a petition for a writ of certiorari, made thoughtful arguments against applying the mixed motives analysis (which he called the "but for" test) to *Batson* cases. *Wilkerson v. Texas*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989).

Although we have yet to decide whether a mixed motives analysis is proper in the *Batson* context, we decline to do so now because all that is before this court is whether such an analysis is unreasonable under *Batson*. *See Gattis*, 278 F.3d at 234–35 (examining mixed motives analysis in the context of a § 2254 petition and concluding that state court did not unreasonably apply *Batson*). Five federal circuits have held that the mixed motives analysis is proper, or at least not unreasonable, under *Batson*. Moreover, the Supreme Court declined to address the issue, and *Batson* itself does not explicitly preclude employing a mixed motives analysis.

Although this court is not endorsing the use of the mixed motives analysis over that of the "taint rule," we must conclude that the Illinois appellate court's use of the mixed motives analysis was not an unreasonable application of *Batson*.

■ Because the mixed motives analysis is not unreasonable under *Batson*, we need not decide whether membership in Operation PUSH is a race-neutral reason for a peremptory strike, as long as the prosecutor's other reasons for Mr. Edmonds's exclusion were race-neutral. The prosecutor explained that he struck Mr. Edmonds because of his "8–year employment at the age of 53 years of age and the statement that he had been a student until 45 years of age." Neither of these reasons implicates race, and thus, as the Illinois appellate court found, they are facially race-neutral. *Batson*, 476 U.S. at 89 n. 12 (employment history is race-neutral); *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 941 (7th Cir.2001) (same).

The Illinois appellate court also found that the race-neutral reasons were non-pretextual because the court credited the trial judge's assessment of the prosecutor's integrity and experience with *Batson*. Those considerations are proper, *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Batson*, 476 U.S. at 98 & n. 21, and a state court's factual findings, such as a prosecutor's motive in the *Batson* context, are presumed correct. 28 U.S.C. § 2254(e)(1); *Coulter v. Gilmore*, 155 F.3d 912, 920 (7th Cir.1998). Mr. Pecor appears to be inviting this court to reassess the facts regarding the prosecutor's characterization of Mr. Edwards's employment history, but his arguments fall short of the clear and convincing evidence required under § 2254(e)(1) to rebut the presumption of correctness. Therefore, we conclude that the Illinois appellate court reasonably applied *Batson* when it

found that there were non-pretextual, race-neutral reasons for striking Mr. Edmonds.

 Finally, Mr. Pecor argues that the trial judge predetermined the outcome of the *Batson* hearing by characterizing the peremptory challenges as "totally innocent" and "unintentional" before the prosecutor explained his reasons for those challenges. Essentially, Mr. Pecor is arguing that the judge was biased, but Mr. Pecor never raised this issue in the state courts, and this court's grant of a certificate of appealability was limited to the *Batson* issue. Thus, the bias claim is procedurally defaulted, and because Mr. Pecor has not attempted to establish cause and prejudice for the default, we decline to address the claim. *See Momient–El v. DeTella*, 118 F.3d 535, 538 (7th Cir.1997).

AFFIRMED.