BRENDA JONES, Adm'r of the Estate of Chester Bailey, Deceased, Plaintiff-Appellant, v. ROCKFORD MEMORIAL HOSPITAL, Defendant-Appellee (Dennis F. Fancsali, Defendant).

Second District    No. 2—99—1347

Opinion filed September 14, 2000.

Gregory E. Barrett and Daniel T. Gilbert, both of Schlueter, Ecklund, Olson, Barrett, Mayfield & Davitt, of Rockford, for appellant.

Robert R. McWilliams, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford, and Frank C. Cook, of Freeport, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Brenda Jones, appeals from orders of the trial court granting judgment in favor of defendants, Rockford Memorial Hospital (Rockford) and Dennis F. Fancsali, M.D., and denying plaintiff's posttrial motions. This appeal does not involve defendant Fancsali. We affirm.

Brenda Jones, as administrator of the estate of Chester Bailey, brought suit against Rockford Memorial Hospital and Dr. Dennis Fancsali, alleging multiple counts of wrongful death and expenses to the estate. Following a jury trial, the court entered judgment against Jones and in favor of Rockford and Fancsali on all counts. Jones's posttrial motion was denied. This appeal followed.

Jones's only contention on appeal is that the trial court erred when it allowed Rockford to exclude an African-American venireman from the jury. According to Jones, Rockford was motivated by a discriminatory animus when it peremptorily excused Norman Pickett as an alternate juror.

Early in his questioning of Mr. Pickett, counsel for Rockford stated,

"Brenda Jones obviously is black. She's right there." Jones's counsel asked to approach the bench and objected "to any inquiry from [*sic*] a prospective juror on the subject of racial prejudice." Following argument, the court overruled the objection and allowed "very, very limited" questioning on the point. Rockford's counsel then concluded his questioning of Pickett as follows:

> "Q. Mr. Pickett, I'm going to make sure that you can be fair to me; and the reason I'm asking this question is Brenda Jones is black. You are going to hear testimony from three other black witnesses; and the question I have got is: Do you think that in any— that the fact that you are going to see black witnesses in here is going to handicap me and prevent me from getting a fair trial because of you, because you are focusing in on just that fact?
>
> A. You will get a fair trial.
>
> Q. I will get a fair trial?
>
> A. Yeah.
>
> Q. Okay."

Rockford then exercised a peremptory challenge to dismiss Pickett. Jones objected, and Rockford was required to present a race-neutral explanation for the dismissal. Rockford responded as follows:

> "MR. McWILLIAMS: Just for a little background, Judge. We tried a case a couple of weeks ago, and there was a black juror on there that I did not strike. I do not routinely strike black jurors. I have never been accused of that in 25 years of practicing.
>
> Now, Mr. Pickett, once I started inquiry, suddenly I sensed through body language—if you noticed, when I started asking some questions, he suddenly crossed both arms in front of his chest (indicating); and I construed that as an act of defiance and challenge.
>
> When I asked him whether or not he could be fair, he flippantly—he said something to the effect, 'Yes, I can be really fair.' I sensed that he was being sarcastic about that; and, frankly, I don't need that type of juror in this kind of situation where I am, in fact, sensing some antagonism between he and I that I'm afraid that may be carried throughout the rest of the case.
>
> I might add that his particular position, I think he's a maintenance man at RHA. He's a repairman, maintenance man. Chester Bailey was an older foundry worker. Frankly, I am concerned that there would be some type of identification with Chester Bailey's situation with Mr. Pickett. I do not routinely and have never routinely exercised preempts against blacks, period."

■ The United States Supreme Court has held that purposeful racial discrimination in the selection of jurors is unconstitutional. See *Batson v. Kentucky*, 476 U.S. 79, 87, 90 L. Ed. 2d 69, 81, 106 S. Ct.

1712, 1718 (1986). This is true in both criminal and civil cases. See *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630, 114 L. Ed. 2d 660, 680, 111 S. Ct. 2077, 2088 (1991). There exists a three-step process for evaluating claims of racial discrimination in jury selection. First, the complaining party must make a *prima facie* showing that the opposing party has exercised peremptory challenges on the basis of race; second, if the initial burden has been met, the burden shifts to the opposition to articulate a race-neutral explanation for excluding the venire member in question; third, the trial court must determine whether purposeful discrimination has been proved. *People v. Randall*, 283 Ill. App. 3d 1019, 1025 (1996).

∎ The explanation for excusing a juror need not rise to the level of a challenge for cause; however, a mere assertion of nondiscriminatory motive or of good faith will not rebut a *prima facie* case. *People v. Andrews*, 155 Ill. 2d 286, 293 (1993). The explanation must demonstrate that the excluded venire member exhibited a "specific bias" related to the particular cause on trial, other than that his or her shared race with a party may bias him or her in favor of that party. *Andrews*, 155 Ill. 2d at 293. The trial court's finding of whether purposeful discrimination has been proved is a finding of fact and will not be overturned on review unless it is found to be clearly erroneous. *Andrews*, 155 Ill. 2d at 293-94.

Here, the record begins with the trial court shifting the burden to Rockford to provide a race-neutral explanation for its exclusion of Mr. Pickett. Rockford's bases for excluding Pickett can be summarized as follows: (1) Pickett's body language was construed as defiant and challenging; (2) he was sarcastic about his ability to be fair; and (3) his occupation as a maintenance man might make him identify with the decedent, who had been a foundry worker.

After hearing arguments, the trial court ruled as follows:

"THE COURT: All right. Thank you for your argument. Thank you for the motion. It's an interesting argument. I'm aware of Batson and its progeny. I have studied it, and we have reviewed it at some judicial conferences.

In this particular case I find that the defense has set forth a race neutral explanation for his challenge as to the juror in this case. I do not wish to comment myself as to whether or not I sensed any hostility between Mr. McWilliams and this juror. I think that is a very subjective determination to be made by counsel upon examination of the witnesses.

However, I do believe Mr. McWilliams is a very fine attorney; and he has examined many, many jurors over the years. I believe that the explanation that he has given for his reason for striking this

particular juror is a legitimate race neutral explanation, which I will accept under Batson.

After hearing all of the arguments of counsel in this case, I am going to overrule the Batson objection. I am going to find that the plaintiff in this case has not established purposeful discrimination on the part of Mr. McWilliams in the striking of alternate juror Norman Pickett."

The following day, the court further explained its ruling:

"I didn't really state anything on the record with respect to my own evaluation of Mr. Pickett's demeanor. Rather, I stated that I felt the attorneys were in the best position to evaluate that. But since the cases hold that the Court should state on the record its own evaluation, I just want to state a couple of observations that I had about Mr. Pickett.

First, I did not really notice anything unusual about Mr. Pickett's demeanor during his evaluation by the plaintiff. But during the examination by Mr. McWilliams near the end of his evaluation, I did notice a couple of things about his demeanor. He did, in fact, cross his arms during the examination by Mr. McWilliams. I felt a couple of his answers were rather short with Mr. McWilliams.

Then one that stands in my mind was I think maybe the last question that was asked. Mr. McWilliams asked whether he felt he could get a fair trial, and Mr. Pickett's answer—and the record will reflect—was 'Yes, you will get a fair trial.' But his manner in answering that question raised some concerns in my mind just while viewing him whether he was being straight forward [*sic*] with Mr. McWilliams in answering that question. All of those did raise a concern in the Court's mind concerning his demeanor as a juror, which would support, I believe, the preemptory challenge.

I do want to state in fairness to Mr. Pickett, that I did not really notice the demeanor issues until after the race issue was raised by Mr. McWilliams in terms of stating 'You are black. Miss Jones is black' and getting into that line of questioning. It wasn't until after that line of questioning was raised that I noticed demeanor issues. There was an objection to that, and I overruled the objection. I found that that was fair inquiry.

Whether or not Mr. Pickett was offended by that particular line of questioning, I do not know; but in fairness to Mr. Pickett and to the plaintiffs, I just wanted to point out that at least that's a possibility. Under the case law my observations of Mr. Pickett in answering the last few questions did raise, I believe, some questions in the Court's mind which would support demeanor as a race neutral reason for exclusion under Batson. I just wanted to make that clear for the record."

We conclude that the trial court's finding that purposeful

discrimination had not been proved was not clearly erroneous. Taking Rockford's explanations in reverse order, we first look at the explanation that Pickett and the decedent had similar occupations. However, a maintenance man and a foundry worker are not similar, certainly not similar enough to be a legitimate, race-neutral reason for excluding Pickett. Therefore, we must look to Rockford's other explanations—Pickett's demeanor as expressed in his body language and answers given during *voir dire*. One of the purposes of *voir dire* is to observe the demeanor of prospective jurors. *People v. Mitchell*, 152 Ill. 2d 274, 296 (1992). This state has consistently held that preemptory challenges may be exercised on the basis of an individual's courtroom conduct or demeanor. See *People v. Munson*, 171 Ill. 2d 158, 178 (1996). Here, Rockford explained that, by crossing his arms, Pickett presented a defiant and challenging air to Rockford and that Pickett's response to Rockford's question about fairness was sarcastic. The trial court noticed that Pickett's demeanor did change when he was questioned by Rockford—he did in fact cross his arms, some of his answers to Rockford's questions were "rather short," and Pickett's manner in answering the question about a fair trial raised concerns that Pickett was not being straightforward in answering the question. The concerns raised by Rockford and the trial court are based on subjective readings of Pickett's movements and oral responses, things that simply do not translate to the sterile typed pages of the record that we must review. While we may read the words of Pickett's response, "You will get a fair trial," we have no independent way to evaluate the tone of the answer. The trial court is in a superior position to observe the demeanor of prospective jurors and evaluate explanations given for peremptory challenges. *Mitchell*, 152 Ill. 2d at 296. We cannot say that a party must disregard what it feels is hostility directed toward it or insincerity in answers given to its questions and accept jurors simply because this court cannot observe or sense these things. The trial court sensed hostility and had questions regarding Pickett's sincerity. We cannot conclude that the court was clearly erroneous in finding these things and deciding that purposeful discrimination was not proved. Therefore, we find no error here.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., *concur.*